THE STATE EX REL. FOURTH NATIONAL BANK OF PHILADELPHIA and others vs. JOHNSON, Circuit Judge.

*December 15 — December 18, 1899.*

*Voluntary assignment: Assignee: Resignation: Removal: Appointment of successor: Qualifications of assignee: "Suitable person:" Superintending control over inferior courts.*

1. While a petition for the removal of the assignee for the benefit of creditors of an insolvent bank and for the appointment of H. to such office, purporting to be signed by a majority of its creditors representing a majority in value of the debts against it, was pending, the circuit judge on his own motion, without determining the sufficiency of the petition, no objections to the appointment of H. being filed or suggested, appointed B. such assignee, and permitted the former assignee, who had, during the pendency of such petition, tendered his resignation, which had been accepted by said judge, to file an answer to such petition for his removal. *Held,* that the acceptance of the resignation of the assignee, while such petition for his removal was before the court for consideration, was, in effect, a removal of such assignee because of his declination to further execute the trust, and was proper.

2. The power of the circuit court to permit an assignee for the benefit of creditors to resign can only be exercised on the presentation of facts to the court justifying judicial action favorably to the resignation; hence the resignation of an assignee which stated no reason therefor does not call for judicial action except as it can be construed as a refusal to further discharge the duties of his trust, warranting his removal under the general power of the court to remove an assignee if the interests of all concerned plainly require such course.

State ex rel. Fourth Nat. Bank of Philadelphia and others vs. Johnson.

3. An assignee, after removal, is not, as such assignee, entitled to be heard in opposition to the petition of creditors for the appointment of his successor, or in any other way, as such assignee, to contest respecting such appointment, either by attorney or otherwise, and hence a proceeding whereby an issue is framed between the creditors and a removed assignee, as to who should be his successor, is extra-judicial.

4. The true intent and meaning of sec. 1702, Stats. 1898, is that, in case of a vacancy in the office of assignee in an assignment for the benefit of creditors, the court shall appoint to the vacancy the person nominated by a majority in number of the creditors of the assignor, representing a majority in value of the debts against the assigned estate, if such nomination be made, unless it appear that the nominee is not a suitable person for the trust.

5. The right of a majority of creditors representing a majority in value of the debts to control the appointment of the assignee is statutory, and a refusal of it by the circuit judge unlawful.

6. The mere fact that a person nominated for assignee by creditors is himself interested in the estate as a creditor, or the trial judge has some undisclosed motive for not appointing him, or deems some other person better suited for the trust, does not justify refusing to appoint such nominee.

7. A "suitable person" within the meaning of sec. 1702, Stats. 1898, does not mean the most suitable, but has regard to interest and business qualifications for the office of assignee, and such relations to the estate and its creditors as will consist with proper and safe administration.

8. In the absence of any showing that their nominee is unsuited for the place, the wishes of such majority of the creditors are controlling, and it is beyond the discretionary power of the court to do otherwise than appoint him, and hence the appointment of B. as assignee, without investigating the sufficiency of the creditors' petition for the appointment of H., and in the absence of any showing that H. was unsuitable for the trust, was in excess of judicial power and contrary to the plain policy of the statute.

9. In view of the legislative policy to allow creditors, in case of a vacancy in the position, to control the selection of an assignee, subject to the opinion of the trial judge as to the nominee being a suitable person for the trust, there is no room for a proper exercise of judicial discretion, where, irrespective of the question of whether the petition contained the majorities called for, there is no opposition to the. appointment by creditors, and no showing of unsuitableness of petitioner's nominee; hence the trial court in ap-

pointing B. assumed and exercised power it did not possess, and in refusing to appoint H. refused to exercise power which it was clearly called upon by statute to exercise.

10. In such case the action of the court, amounting to a nullification of the whole scheme of the statute, was such a wrong done the creditors that, in order to change the situation at the earliest practicable moment and miminize its effects, it could only be redressed in the summary method of appeal to the constitutional superintending power of the supreme court.

11. In such case the order appointing B. was not necessarily a nullity, and hence it should be formally vacated and the nominee of the creditors immediately appointed, in order that there be no interval of time when there is no person to regularly represent the assigned estate.

MANDAMUS to D. H. JOHNSON, Judge of the Circuit Court for Milwaukee County. *Peremptory writ granted.*

June 1, 1893, The Plankinton Bank, a banking corporation organized under the laws of this state and located at the city of Milwaukee, made a voluntary assignment for the benefit of creditors to its vice president, William Plankinton, who, in due time, qualified and entered upon the duties of the trust created by such assignment. He failed to file a report of his doings as assignee till July 1, 1898, at which time he made a report in response to an order of the court requiring it, which, on due notice to creditors, was brought to the attention of the court August 10, 1898, when such objections as the nature of the account would permit were filed by creditors, and a motion was made that the assignee be required to file a more definite and certain account. May 9, 1899, without disposing of such motion and without any opportunity for the creditors to be heard on the merits of the account, the court made an order approving it, except as to the claim of the assignee for compensation, as full and complete and in accordance with the statute governing the subject, up to the date thereof, and extending the time for the final settlement of the estate till January 1, 1900. On the next day the assignee resigned and his resignation was ac-

cepted by the court to take effect upon the final confirma-
tion of his account, and the matter was referred to a circuit
court commissioner to state the account subsequent to the
date of the one filed as aforesaid and to report such state-
ment to the court. After the making of such order the
court refused to allow the creditors to examine the officers
of the assignor and the assignee before the court or a com-
missioner thereof, and thereafter, on the 17th day of June,
entered an order denying the motion of the July previous,
that the assignee make his account more definite and certain.
Some days later the last-mentioned order was amended by
making all the papers in the assignment proceedings a part
of the record in the proceedings which resulted in its entry.

At that stage of the administration of the assignment last
above indicated, this court, on a petition setting forth all the
facts above detailed and facts showing that the rights of the
creditors would be lost beyond remedy unless immediate re-
lief were granted against the various judicial acts referred
to, duly issued an alternative writ of *mandamus* requiring
the circuit judge to allow the creditors to examine the as-
signee and officers of the assignor and to file objections to
the assignee's account that had been confirmed, and to va-
cate the orders referred to standing in the way of such exam-
ination and the filing and hearing of such objections, or to
show cause why to the contrary on the return day named
in the writ. Such proceedings were had on such return day
and thereafter, that this court decided that the assignee's
account of July 1, 1898, was not a compliance with the stat-
ute in regard to a final account; that the creditors had an
absolute right under sec. 1693*b* to an inspection of the as-
signor's books and to examine the officers of the assignor
under oath; that, independent of the statute, the creditors
were entitled to examine the assignee and the officers of the
assignor within reasonable limits, and that the denial of that
privilege was beyond the discretionary power of the circuit

court; that under the constitutional superintending power of this court it may compel lower courts to do acts not discretionary, and, as to discretionary acts, may compel them to perform their duty by exercising judicial discretion in the premises and to undo acts done in such manifest disregard of judicial duty as to leave no room to say there was a reasonable excuse therefor,— it appearing that, without such exercise of such superintending power, the denial of rights secured by law would go without any adequate remedy and cause great and irreparable mischief and hardship; and that the disclosures made in the proceedings for the writ of *mandamus* warranted the exercise of such superintending power within the principles stated.

In accordance with the conclusions reached, as indicated, a peremptory writ of *mandamus* was issued, in effect making mandatory the alternative commands of the first writ. The case will be found reported in 103 Wis. 591.

June 13, 1899, a petition was filed in the circuit court, purporting to be signed by a majority of the creditors of the assignor representing a majority in value of the debts against the assigned estate, setting forth such to be the facts; that the assignee, with other officers of the assignor, were liable to creditors for abuse of their trust as such officers; that the personal interests of the assignee were adverse to the interests of the creditors which he was bound to protect; that he had neglected and was neglecting his duties as assignee in order to conserve his personal interests, to the great damage of the creditors, and that the creditors would be irreparably damaged unless an assignee wholly devoted to their interests were appointed. Henry W. Herman was named by the petitioners as a suitable person to be appointed in place of Mr. Plankinton, and his appointment was requested. The petition, on due notice to the creditors and all parties interested, was brought to the attention of the court, whereupon the assignee filed an answer thereto,

State ex rel. Fourth Nat. Bank of Philadelphia and others vs. Johnson.

among other things taking issue with its allegations as to the parties thereto being sufficient to require his dismissal under the statute, sec. 1702. Thereupon the petition was amended by correcting and verifying names of creditors that were misspelled so as not to be easily identified as identical with names of creditors having claims on file, also by correcting mistakes that resulted in the same name appearing twice in the petition, and by adding to the petition the names of a considerable number of creditors who came in and participated in the proceedings subsequent to the making up of the petition in the first instance. The original and amended petitions showed on their face that they contained the number of creditors representing the amount of debts against the assignor, requiring, as matter of right, a change in the assignee under sec. 1702*b*. Opportunity was given the assignee to take issue with the allegations of the amended petition, but he neglected to do so till long after he ceased to be assignee, as hereinafter stated.

While the proceedings for the removal of Mr. Plankinton were at the stage above set forth, an order was entered pursuant to the writ of *mandamus* issued as before indicated, vacating an order previously made accepting the resignation of Mr. Plankinton conditionally, and at the same time the judge, of his own motion, accepted such resignation as follows: "It is ordered that the resignation of William Plankinton, assignee of The Plankinton Bank, the assignor above named, be and the same is hereby accepted to take effect upon the appointment and qualification of his successor."

On the 14th day of July, 1899, the matter of the appointment of a successor to Mr. Plankinton as assignee was taken up by the circuit court and heard. There were no objections or exceptions on file, or made on the hearing, to the appointment of Henry W. Herman in accordance with the nomination made by the creditors in their petition, and no question was made by any creditor or any person on behalf

of creditors, or the former assignee, Mr. Plankinton, or by any person interested in the assignment, but that the petition was sufficiently representative of the creditors of the assigned estate to satisfy all the requisites of sec. 1702. The court took the matter of the appointment under advisement and on the following day officially stated that for the purposes of the proceedings it would be taken for granted that the petition satisfied the requisites of sec. 1702, but that such section did not require, in any event, the appointment as assignee of the person nominated by the creditors; that the statute left it entirely to the discretion of the circuit court or judge to name such person as assignee as in his judgment was best suited for the trust. Thereupon, without informing the creditors of any other reason for ignoring their wishes in regard to the appointment of Mr. Herman, except that power was vested in the circuit judge to name a person entirely independent of the wishes of the creditors, he announced that Irving M. Bean, a person reputed to be a close personal friend and business associate of Mr. Plankinton, would be appointed as his successor, and without giving the creditors any opportunity to be heard in opposition to such appointment, though a request for such a hearing was made on their behalf, the appointment was made. Thereafter a request for the entry of a formal order making the attitude of the court in the matter appear of record was denied. The order appointing Mr. Bean was prepared by the attorneys for the old administration and signed July 15, 1899, but was not placed on file, nor were the attorneys for the creditors able to get access to it till July 21, 1899, when they discovered for the first time that the court finally determined that the question as to whether the petition of the creditors was signed by a majority of all the creditors of the assignor representing a majority in value of the debts against the assigned estate, was deemed not adjudicated, though it had been understood

before and suggested by the judge that it was immaterial to his action whether the petition was representative of the wishes of the creditors as claimed by the petitioners or not, and that for the purposes of the proceedings it might be considered as sufficient in that regard.

August 31, 1899, the petitioning creditors applied to the court to amend the order appointing Mr. Bean in accordance with the facts, that is, so that it would show that the petition which called for the appointment of a new assignee satisfied the calls of the statute (sec. 1702), as the court considered it when the order was made, which application was denied after holding the matter till November 18, 1899, at which time an order was entered by the circuit judge allowing the ex-assignee, Mr. Plankinton, to file an answer to the petition for his removal, within ten days.

November 24, 1899, a verified petition, by and on behalf of the creditors of the bank, was presented to this court, setting forth all the foregoing facts and other facts to the effect that the appointment of Mr. Bean was, in effect, a continuation of the administration of Mr. Plankinton, and facts showing that irreparable mischief and wrong would be done to the creditors unless summary relief could be had for the alleged wrongs to them by denying their statutory right to an assignee of their own choosing to administer the estate of the bank under the supervision of the court for their benefit; that the change from Plankinton, assignee, to Bean, assignee, left the creditors as remediless as before, as to having any proper investigation of the doings of Mr. Plankinton in the prosecution for the benefit of creditors of many matters that were hostile to him; that the preservation of the interests of the creditors required a radical and entire change of administration from one that had been carried on in the interests of the assignor and its officers, controlled and managed by its and their attorneys, to one in the inter-

ests of creditors under the advice of attorneys working solely in their interests. On such petition an alternative writ of *mandamus* was issued, reciting the substance of the petition and containing the following command: " We therefore command and require you, the said *Daniel H. Johnson*, that as circuit judge of the court aforesaid, you do forthwith, and within twenty-four hours after service on you of this our alternative writ of *mandamus*, vacate and wholly set aside the order bearing date July 18, 1899, aforesaid, appointing Irving M. Bean to succeed William Plankinton as such assignee, and that, instead thereof, you forthwith proceed to ascertain and determine whether said petition of creditors is signed by or on behalf of a majority in number of the creditors of the said assignor who represent a majority in value of the debts of said estate, and if such is found to be the fact, that you appoint as successor to William Plankinton, as assignee of The Plankinton Bank, the Henry Herman named in said petition unless he be unsuitable for such trust, or that, in the event of your failure to perform such acts or any of them, you show cause before our said supreme court on the 15th day of December next at the supreme court room in the capitol of the state, at the opening of the court on that day or as soon thereafter as the matter can be heard, why a peremptory writ of *mandamus* should not issue out of said supreme court requiring the same to be done; and have you then and there this writ."

To that writ the circuit judge made return as follows:

" I, *Daniel H. Johnson*, . . . answering and making return to said alternative writ, respectfully show, that the prior writ of *mandamus* referred to contained the following commands:

" ' Immediately after the receipt of this writ you, the said *Daniel H. Johnson*, circuit judge of the second judicial district of Wisconsin, do vacate and set aside the order dated June 9th, 1899, confirming the account of William Plankin-

ton, assignee, filed July 1, 1899, and you exercise the juris-
diction vested in you as such judge and in such court to
entertain and act upon a motion requiring such assignee to
make and file a final account and report covering all the mat-
ters of his administration as contemplated and required by
sec. 1701 of the Revised Statutes, and that you accord to any
creditor the right to file and have considered objections to
such final account as provided by said section, and a full
opportunity to examine the officers of said assignee under
sec. 1693*b* of the Revised Statutes, and opportunity to examine
the assignee in regard to all matters concerning his adminis-
tration of the assigned estate, and that you also vacate and
set aside all orders entered by said circuit court or by you
as judge thereof in any way interfering therewith.'

"This respondent has to the best of his judgment fully
complied with the commands of said writ, both in letter and
spirit; that orders for that purpose granting everything any
attorneys of any creditors claimed under said writ were
entered on the 12th day of July, 1899; that the orders fur-
thermore accepted the resignation of William Plankinton
as assignee of said bank to take effect upon the appointment
and qualification of his successor.  At the same time there
was a hearing as to the person to be appointed his successor.
This I held for consideration.

"It was claimed by attorneys for creditors that amend-
ments to an original petition for the removal of William
Plankinton, which was filed after he had tendered his resig-
nation, together with such original petition, had the signa-
tures of a majority in number and amount of the creditors
of the bank in favor of the appointment of Henry Herman
as assignee.  This claim was disputed and no application was
made to have the petition and amendments investigated in
that respect.  In my judgment there was no occasion for
such an investigation.  I deemed it my duty to appoint an
undoubtedly unexceptional person as assignee, a person who

would know the duties of the trustee and be free from any interest or influence.

" I was not satisfied that Mr. Henry Herman was the proper person. He had been buying up claims against the bank to a considerable extent. This and other facts known to me led me to the conviction that in the interests of all the creditors of said bank some other and entirely disinterested person should be appointed.

" I therefore of my own motion selected and concluded to appoint Mr. Irving M. Bean, of whose integrity, ability and independence there is no doubt.

" The most prominent firm of attorneys, who had joined in said petition, informed me the next day that they were satisfied with the appointment. Mr. Bean entered upon his duties with apparently general acquiescence. He had been in office over four months when this alternative writ was issued.

" If there is any charge or complaint that he has not done his full duty, it has not been brought to my attention.

" It is my deliberate judgment that the appointment was prudent and judicious, and ought to stand. I perceive no possible view in which it can work injustice to any creditor.

" I have for these reasons not vacated and set aside the order bearing date July 18, 1899, appointing Irving M. Bean to succeed William Plankinton as such assignee.

" I beg to suggest that for obvious practical reasons said order, if vacated at all, ought not to be vacated until another appointee is ready to be substituted. I beg further to report that an investigation as to whether said petitions were signed by or on behalf of a majority in number of the creditors of said bank, representing a majority in value of the debts of the same, is now in progress under the order of this court. The circumstances which led to such investigation are as follows: A motion was made by six creditors, through Mock and Wittig, their attorneys, pursuant to a notice dated Au-

gust 31, 1899, to modify the order of July 18, 1899, in its
recital referring to the petitions for the removal of William
Plankinton as assignee, which motion coming to a hearing
was denied on the —— day of November, 1899. At the hear-
ing of such motion the attorneys making the same claimed
and insisted that unless said order was modified, they had a
right to a trial and hearing upon said petitions; that the
same was necessary to make the record they desired for the
supreme court. I thereupon determined to give them such
trial and hearing, and with that view, and for that purpose,
gave William Plankinton, who was absent from the city at.
that time, ten days to answer the amended petitions, the
original petition having theretofore been put in issue by
him; that the time was afterwards extended so as to expire
December 5, 1899. In the meantime on the 1st day of De-
cember, 1899, your alternative writ of *mandamus* was served
on this respondent. On the 5th day of December, 1899,
William Plankinton served and filed an answer to the
amended petition, and on the 7th day of December, 1899, I
made an order of reference to Hugh Ryan, Esquire, court
commissioner, at once to investigate and take proofs as to
said petitions, and as to whether or not the same were sup-
ported by a majority in number and amount of the creditors
of said bank; that said investigation was commenced before
said court commissioner on the 11th day of December, 1899,
and has proceeded from day to day, and is not concluded.''

The petitioning creditors, by their attorneys, demurred to
such return for insufficiency, and prayed for the issuance of
a peremptory writ of *mandamus* making mandatory the com-
mands of the first writ.

*J. B. Doe, M. M. Riley, Moritz Wittig*, and *C. E. Esta-
brook*, for the relators.

*F. C. Winkler*, for the respondent.

[No briefs on file.]

The following opinion was filed June 21, 1900, and con-

State ex rel. Fourth Nat. Bank of Philadelphia and others vs. Johnson.

tains the points as announced in the memorandum decision filed December 18, 1899:

MARSHALL, J.   The issues, raised as above indicated, present for consideration several important primary questions and it has been deemed best to preserve of record the grounds for the conclusion reached as to each of them.   We will accomplish that object by stating here each of such conclusions and briefly the supporting reasons.   No question of judicial power to deal with the subject of this case is open for consideration.   Everything pertaining to the case in that regard was fully considered in *State ex rel. Fourth Nat. Bank v. Johnson*, 103 Wis. 591.   The conclusions there reached are controlling.   It is a matter of some regret that the constitutional power of this court, by the exercise of its original jurisdiction to superintend and control inferior courts, has been necessarily invoked a second time in this matter, to vindicate the rights of creditors to an efficient use of the means wisely designed for the protection of their interests, to the end that an assignment for the benefit of creditors may be in fact what it is in name and theory.   If anything were wanting to demonstrate the wisdom of the framers of our state constitution in intrusting to this court the ancient sovereign power to safeguard the personal and property rights of citizens by acting directly upon those courts upon which devolve the duty to treat such matters primarily, where otherwise such rights would be denied by a refusal of such courts to exercise, or keep within, or act judicially within, their jurisdictions,— situations like the one we have now to deal with amply furnish it.   The judicial history of the state shows that there have been very few occasions for the exercise of the extraordinary power here invoked, and that suggests that it has always been understood to be what it is in fact, a power to be used only when there is no other remedy under our judicial system that will meet

the situation and prevent irreparable mischief, and when that mischief springs from something other than mere error of judgment. It is not probable that the court in the future, any more than in the past, will be often called upon to exercise such power. Knowledge that it exists will promote such care in judicial administration as to give little cause for calling it into activity. The necessity for the exercise of the superintending power of the court in this instance was the same as in the case of *State ex rel. Fourth Nat. Bank v. Johnson, supra.* The decision of the court there, by subsequent administration of the assignment in the court below, was rendered so ineffectual to start and keep such administration in the line contemplated by the statutes and such decision, that it seems clear this second proceeding was necessary. We will now proceed in detail to carry out the plan above indicated for this opinion, of stating the points decided and the supporting reasons and authorities.

1. The acceptance of the resignation of William Plankinton as assignee of the Plankinton Bank, while a petition for his removal as such assignee, purporting to have been signed by a majority of the creditors of the assignor, representing a majority in value of the debts against the assigned estate, was before the court for consideration, was, in effect, a removal of such assignee because of his declination to further execute the trust, and was proper.

The significance of that conclusion grows out of a suggestion upon the one hand that if creditors have in any event the absolute right to dictate who shall be the assignee, it is only upon a vacancy in the position of assignee being created by a removal under the mandatory clause of sec. 1702, Stats. 1898, to the effect that upon a request being made for such removal by a majority of the creditors, representing a majority in value of the debts against the estate, such request shall be granted, and thereupon the person named by such creditors, or some suitable person, shall be appointed

as his successor; while it is suggested on the other hand that the petition for the removal of William Plankinton was in fact sufficient and so treated by the trial court, and that the acceptance of his resignation was without authority, there being no power conferred by statute in that regard.

Sec. 1693, Stat. 1898, confers generally upon circuit courts, and upon judges thereof, authority to supervise voluntary assignments for the benefit of creditors and to make all necessary orders for the execution thereof. It was plainly the intent of the legislature, by that provision, that the general jurisdiction of courts of equity in the administration of trusts, including the power to supply a trustee when necessary, and to permit one, after acceptance of the trust, to resign under such circumstances as shall fully protect the persons interested, and to remove an assignee for cause, should apply to the administration of voluntary assignments for the benefit of creditors. Perry, Trusts, § 280; secs. 2095, 2096, Stats. 1898. Sec. 1702, except in so far as it requires a change of assignees in certain cases on a petition of creditors, was not intended to confer any new power upon the court, but to regulate the procedure in the execution of a power conferred by the general language of sec. 1693, placing assignees under the supervision of courts of equity. Sec. 1702 says the circuit judge may, upon notice and after hearing, remove an assignee shown to be incompetent or to have been disqualified, or to have wasted or misapplied any of the trust estate. It will be recognized at once that any one of the grounds mentioned in the statute for removing an assignee would amply justify a removal if there were no statute. Perry, Trusts, § 280.

Notwithstanding a circuit court may permit an assignee to resign, it does not follow that the power can be exercised without any grounds therefor. There must necessarily be some presentation of facts to the court justifying judicial

action favorably to the resignation. Nothing of that kind appears here. In the face of a petition for the removal of the assignee, stating reasons that would not only justify but would require it, he filed his resignation without stating any reason whatever for such action. That was not a resignation calling for judicial action as such, but a refusal to further discharge the duties of the trust, which unquestionably warranted an order removing him, and an acceptance of such resignation under the circumstances was really an order of removal. *Keating v. Vaughn,* 61 Tex. 518.

It would be a very unjudicial proceeding to permit an assignee to resign without any reason therefor whatever, in the face of such a petition as was filed in this case, unless the action of the court were considered as intended to be a removal of the assignee; not necessarily a removal within either the letter or the spirit of sec. 1702, but rather within the general power of the court to remove an assignee where the interests of all concerned in the assigned estate plainly require that course to be pursued. But whether the vacancy was created by the removal of Plankinton or his being permitted to surrender his trust, the necessity for the appointment of a successor, and the interest of the creditors therein, were the same, and Plankinton's status regarding that question likewise the same.

2. After the removal of the assignee he was not, as such assignee, entitled to be heard in opposition to the petition of the creditors for the appointment of his successor, or in any other way, as such assignee, to contest respecting such appointment.

That proposition, it would seem, may be taken without discussion, as self evident. Why the deposed assignee was permitted, as an interested party, to file an answer to the creditors' petition, and to be heard in opposition thereto on the subject of his successor, is a question that no one has

ventured to answer. The respondent says that the creditors demanded an adjudication of the sufficiency of the petition to satisfy the calls of sec. 1702, Stats. 1898, and that in order to meet their views he compelled them to submit to a contest with Plankinton after his removal. But why any such proceeding was necessary or proper to such an adjudication is not suggested. Plankinton being out, the sufficiency of the petition for his removal became immaterial. Being out, the question of who should be his successor was a matter in which he had no interest whatever. The question of his removal was the only one, in any event, that Plankinton had any interest in. Upon his removal from the position, there was nothing left of the creditors' petition in which he was sufficiently concerned to entitle him to appeal from what the court might conclude to do at the request of creditors as to filling the vacancy. It would have been just as legitimate, under the circumstances, for the court to have designated any other stranger than Plankinton to the proceedings to assume an adversary attitude to the petitioning creditors and to antagonize their efforts to have a person satisfactory to them appointed to administer the trust. The whole proceeding of compelling the creditors to contest with Plankinton as to who should be his successor, appears to have been extrajudicial. If the court had entered an order on the creditors' petition, appointing the man of their choice as assignee immediately after Plankinton's removal, and he had appealed from such action, the appeal would necessarily have been dismissed, if for no other cause, for want of interest of the appellant in the subject.

3. The true intent and meaning of sec. 1702, Stats. 1898, is that, in case of a vacancy in the office of assignee in any assignment for the benefit of creditors, the court shall appoint to the vacancy the person nominated by a majority in number of the creditors of the assignor, representing a

majority in value of the debts against the assigned estate, if such a nomination be made, unless ·it appears that the nominee is not a suitable person for the trust.

The intent of the statute to permit the creditors to select an assignee to fill a vacancy in the position, subject to their naming a suitable person for the trust, is sufficiently indicated by the fact that the circuit court is required, by mandatory language, to remove an assignee when requested so to do by a specified proportion of the creditors, representing a specified proportion of the indebtedness of the assignor, and to substitute the nominee of such creditors regardless of any reason for the change except the mere wish of such creditors. That is consistent only with the idea that the creditors of an assigned estate are to be considered the real owners thereof in the proceedings to administer it, and that their wishes, so far as consistent with the due execution of the trust, in the handling of that which is equitably their own property, must be recognized and given effect by the court. While the assignee, in the first instance, must, from the necessities of the case, be appointed by the assignor, as soon as the equitable title to his property has passed to his creditors, they are entitled, by statute, to control it for the purpose of the trust, through such agent as they may select, subject only to their being able to agree upon a suitable person, and subject to such supervision by the court as may be necessary to secure an honest administration of the trust and the closing up thereof as the law provides.

The words of the statute "or some suitable person," following words requiring the court to appoint the nominee of the creditors as assignee in case of a change, obviously mean that if the nominee of the creditors is unsuitable the court may appoint a person who is suitable. The idea that the legislative intent was to permit the court to appoint a suitable person as assignee regardless of the wishes of the creditors in regard to some other suitable person, seems contrary

to the reason and spirit, if not the very letter, of the statute. It will be noted that the necessity for creditors, representing a certain proportion of the indebtedness of the assignor, to join in a petition in order to satisfy the calls of sec. 1702 has regard only to the absolute right of creditors to have an objectionable assignor discharged or removed. The removal having taken place and a vacancy in the position created, the statute says, in effect, that the court shall appoint the person designated by the creditors if he be a suitable person for the trust. The legislative idea plainly was that, a vacancy being created in the office of assignee, regardless of the occasion of it, the wishes of the creditors are to be regarded in filling the place, upon the theory that they are really the only persons concerned in the matter.

4. The right of creditors to control the appointment of the assignee in the circumstances mentioned is statutory, and a refusal of it by the presiding judge, unlawful.

Nothing need be said in regard to that proposition in addition to what was said to proposition 3.

5. The mere fact that a person nominated for assignee by creditors is himself interested in the estate as a creditor, or the trial judge has some undisclosed motive for not appointing him, or deems some other person better suited for the trust, does not justify refusing to appoint such nominee.

The right of the creditors to name the assignee, subject to their presenting a suitable person for the trust, carries with it, necessarily, the right to know why their nominee is deemed unsuitable, and the right to ample opportunity to present another name or names, and precludes their right of selection being properly treated as lost till they shall have failed to agree upon a suitable person after all reasonable efforts to that end have been exercised. A suitable person, within the meaning of the statute, obviously does not mean the most suitable. The court has no authority to reject the nominee of creditors merely because a better per-

son, in the judgment of the presiding judge, can be obtained.

The only ground of unsuitableness of the nominee of the creditors here suggested by the return of the respondent is that he was a creditor of the estate. We have no statute prohibiting a creditor of an insolvent person from being his assignee, while the policy of the law plainly prefers creditors as trustees of property where it is to be administered in whole or in part for their benefit. Such is true in the administration of estates. Courts elsewhere have treated such legislative policy as clearly indicating that the circumstance of a person being the creditor of an insolvent is to be regarded rather as entitling him to a preference as assignee than as a disqualification. *Frink v. Buss*, 45 N. H. 325. In no instance that we can find was the mere circumstance that a person was a creditor, in the absence of some statutory regulation on the subject, regarded as affecting unfavorably his qualification for the position of assignee of his debtor for the benefit of the latter's creditors, while the contrary has been many times held. Burrill, Assignment, § 57, and cases cited.

So it follows that no justification appears for ignoring the wishes of the creditors, as was done by the court in this case. No suggestion was made, when the creditors' nominee was rejected, that he was unsuitable for the trust, and no suggestion in that regard, within the meaning of the statute, is made in the return of the respondent. The word " unsuitable " as used in sec. 1702 plainly has regard to interest and business qualifications for the office of trustee, and such relations to the estate and its creditors as will be consistent with the proper and safe administration of the trust. Those requisites being reasonably satisfied, there is no room, under the statute, for the court to act other than one way, and that to sanction the wish of the creditors. Any other course is a mere arbitrary, unjudicial act, in direct violation of statutory rights.

What has been said we embody in propositions 6, 7, and 8, decided as follows:

6. The wishes of the creditors in the circumstances above mentioned are controlling, in the absence of any showing that their nominee is unsuited for the place, and it is beyond the discretionary power of the court to do otherwise than to make the appointment accordingly.

7. The appointment of Irving M. Bean as assignee, without investigating the sufficiency of the creditors' petition for the appointment of Henry W. Herman, and in the absence of any showing that the latter was unsuitable for the trust, was in excess of judicial power, and contrary to the plain policy of the statute.

8. Irrespective of whether the petition contained a clear majority in number of the creditors of the assignor, representing a majority in value of the debts against the assigned estate, since it was unquestionably largely representative of the wishes of creditors, and there was no opposition thereto by creditors, and no showing of unsuitableness of the petitioners' nominee, there was no room for a proper exercise of judicial discretion, in view of the legislative policy to allow creditors to control the selection of an assignee in case of a vacancy in the position, subject to the opinion of the trial judge as to the nominee being a suitable person for the trust.

It follows that the proceedings of the trial court were ruled by a misconception of the statutory rights of the petitioning creditors. The court assumed and exercised power that it did not possess, and refused to exercise power which it was clearly called upon to exercise by statute. . The result, was that the whole scheme of the statute, to allow creditors of an insolvent, who has made a voluntary assignment for the benefit of creditors, to control the office of assignee, was nullified. That situation, manifestly, should be changed at the earliest practicable moment, in order that the wrong done to the creditors may be minimized so far as possible. It was

a wrong that cannot be redressed in any other way than in this summary method of appeal to the constitutional super-intending power of this court.

The order appointing Bean need not necessarily be treated as a nullity. It should be formally vacated and the nominee of the creditors be immediately appointed in order that there may be no interval when there will not be a person to regularly represent the assigned estate. Without that course, it might be necessary to appoint a receiver pending the selection of an assignee.

The petition of the creditors for the appointment of Mr. Herman, *prima facie*, represents a majority of all of the creditors, and of all of the indebtedness of the estate; but whether it is in fact so strongly representative of the wishes of creditors as indicated upon its face or not, is not deemed material. There is no opposition by any creditor to Herman's appointment. Under such circumstances the court has no right to refuse to appoint him and ignore the wishes of the creditors, merely because the petition is not sufficient strictly to require the creation of a vacancy if Plankinton had not resigned the trust. So large a representation of creditors as the petition unquestionably contains, there being a vacancy to be filled, should have been considered, and should be now considered, as voicing the entire interest in the estate desiring to be heard on the selection of an assignee.

In view of what has been said, it is held, as a final conclusion and last proposition decided:

9. The violation of the statutory right of creditors by the appointment of Irving M. Bean as assignee should be remedied by a speedy vacation of the order of appointment; and since it is for the best interests of the creditors that the office of assignee should not be vacant, and there is no express wish by creditors for the appointment of any person other than Henry W. Herman to the trust, and no valid reason disclosed why he is not suitable therefor or should not be appointed,.

.State ex rel. Fourth Nat. Bank of Philadelphia and others vs. Johnson.

a wise judicial administration requires, not only that the appointment of an assignee should be made in place of Irving M. Bean at the time of the making of the order vacating the appointment of the latter, but that Henry W. Herman should be such appointee, and that the proceedings in that regard should be had speedily, and without delay, to determine whether the petition under investigation before the court commissioner contains a clear majority in number of the creditors of the assignor, representing a majority in value of the debts against the assigned estate. If the affirmative of the proposition were established, and no showing were made of unsuitableness of Herman, the right of the creditors to his appointment would be beyond the discretion of the circuit judge to deny. If the negative were established, since the petitioners are largely representative of the creditors, it would be an abuse of discretion not to appoint Herman; he being suitable for the trust, and his appointment not being opposed by creditors.

The foregoing covers all that need be said in deciding this case. A peremptory writ of *mandamus* should issue in accordance with the points decided in this opinion.

*By the Court.*—So ordered.