# CASES DETERMINED

# January Term, 1908.

---

STATE EX REL. McGOVERN vs. WILLIAMS, Circuit Judge.

*April 23—May 8, 1908.*

*Courts: Decision of jurisdictional and preliminary questions: Refusal to entertain action: Superintending control of supreme court:* Mandamus: *Vacation of orders: Selection of grand jurors: Identity of person chosen: Similarity of names: Designation of residence.*

1. A court must always inquire whether the law either gives it the jurisdiction or imposes upon it the duty to entertain a given controversy, and must inquire into existence of facts, either of notice to one of the parties or of some other preliminary condition, upon which the law imposes on it the power and duty; and in deciding these questions the court acts judicially.

2. Where an inferior court decides a jurisdictional question or one preliminary to the main controversy submitted to it adversely to its jurisdiction and refuses further action, such decision, although judicial in character, constitutes, if erroneous, a refusal to perform its duty with respect to the main controversy; and in the absence of other adequate and sufficient remedy this court may, under the superintending control granted in sec. 3, art. VIII, Const., review such decision and consider whether or not it is the duty of the inferior court to entertain the controversy.

3. Performance of its duty by the inferior court in such a case may be compelled by *mandamus;* and the writ may be so framed as to compel, as ancillary to and in aid of the primary relief granted, the vacation of orders made by the inferior court which constitute formal obstacles to the performance of such duty.

VOL. 136—1

4. The decision of a trial court that the action of the grand jury in returning an indictment was void and that no valid indictment existed against defendant because a person not selected by the jury commissioners had served on such jury, is one preliminary to the main controversy and may be reviewed by this court under its constitutional superintending control of inferior courts.

5. Upon thè list of names from which grand jurors were to be drawn the jury commissioners placed the name of "George J. Davies, 663 38th Street." A venire was served upon John George Davies, who lived at that address, and he attended and served as a grand juror. Upon the evidence (summarized in the opinion) it is *held*, contrary to the decision of the trial court, that the man who so served, and not a George Jeremy Davies who lived on Cedar street, was the identical person whom the commissioners had selected, and that an indictment found by the grand jury was not void because of his participation in its action.

6. The use of a middle initial may under some circumstances be very significant in the identification of a person; but that significance varies much with circumstances, and the misplacement of an initial used by one whose current Christian name is also used is so probable and frequent an occurrence, at least among those whose acquaintance with him is not exact and intimate, that its significance is very much diminished.

7. While jury commissioners have no official duty to state the place of residence of a person selected, the fact that they do state it is none the less significant of the identity of the person whom they had in mind in placing the name on the jury list, and is of so vastly greater weight than the mere transposition of an initial as to entirely outweigh it.

MANDAMUS to ORREN T. WILLIAMS, Judge of the Circuit Court for Milwaukee County. *Imperative writ granted.*

By the petition and alternative writ of *mandamus* it is made to appear that on April 1, 1904, an indictment was returned by a grand jury against one Biersach charging him with crime. To that indictment, when called up in the circuit court for Milwaukee county, three pleas in abatement were interposed. The second and third pleas have been overruled and are not material of statement. The first plea set

forth that the grand jury was illegally constituted in that one John George Davies served thereon, who was not selected by the jury commissioners and whose name was not placed upon the general jury list and was not drawn from the box as one of the seventeen men to constitute the grand jury in question, whereby he was incompetent to serve.

The court took testimony with reference to the identity of the person who had been selected by the jury commissioners and designated by the name George J. Davies, his name having also been drawn from the box as one of the grand jury, and reached the conclusion that the John George Davies who served upon the grand jury was not the person so selected and drawn by the jury commissioners. As a result of such conclusion he ordered that the indictment be abated and quashed and refused to proceed further with the trial of the charge therein made. He, however, did not formally discharge the prisoner, but entered a stay of proceedings to enable an application to this court for such relief as might be deemed proper.

The evidence on which the circuit court reached its determination is set forth in the petition, and all other facts material to the action of this court are conceded by the respondent to be so set forth, so that a final determination might be reached upon the motion to dismiss the writ and petition which was interposed by the respondent.

A large number of other indictments were presented by the same grand jury, the validity whereof is assailed on the same ground. The ruling of the circuit court will prevent the trial of such offenses, many of which are now barred by statutes of limitation, so that great and irreparable injury is done the public, and the administration of justice obstructed, if, as claimed by relator, the ruling of the circuit court is wrong.

For the relator there was a brief by the *Attorney General, Francis E. McGovern,* district attorney, and *Franz C. Esch-*

*weiler,* assistant district attorney, and oral argument by *Mr. McGovern* and *Mr. Eschweiler.* They argued, among other things, that precisely the relief prayed for here, to review on behalf of the state proceedings in a criminal case, has been granted in numerous other courts. *Luton v. Newaygo Circuit Judge,* 69 Mich. 610; *Grand Rapids v. Braudy,* 105 Mich. 670; *State ex rel. Bayha v. Philips,* 97 Mo. 331; *Swift v. Wayne Circuit Judges,* 64 Mich. 479; *People ex rel. Robison v. Swift,* 59 Mich. 529, 26 N. W. 694; *Louisell v. Benzie Circuit Judge,* 139 Mich. 40, 102 N. W. 371; *People v. Murray,* 72 Mich. 10, 15; *Clute v. Ionia Circuit Judge,* 139 Mich. 337, 102 N. W. 843; *Hill v. Morgan,* 9 Idaho, 718, 76 Pac. 323, 326; *State ex rel. Smith v. Smith,* 69 Ohio St. 196, 68 N. E. 1044; *State ex rel. Shannon v. Hunter,* 3 Wash. 92, 27 Pac. 1076; *State ex rel. Harris v. Laughlin,* 75 Mo. 358; *People ex rel. Coberly v. Scate,* 3 Scam. (4 Ill.) 351; *Crane v. Saginaw Circuit Judge,* 111 Mich. 496.

For the respondent there was a brief by *Lyman G. Wheeler,* attorney, and *Walter Schintz* and *Carl Runge,* of counsel, and oral argument by *Mr. Wheeler.*

DODGE, J. The present application is confessedly addressed to the power vested in this court by the constitution of superintending control over inferior courts. The meaning of that grant of power was very fully expounded in *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 79 N. W. 1081, and the following conclusion reached and stated at page 614 (79 N. W. 1087):

"It is very apparent that when the makers of the constitution used the words 'superintending control over all inferior courts' they definitely referred to that well-known superintending jurisdiction of the court of king's bench. In England it was a branch of the king's power lodged with the king's court; in this country it is a branch of the sovereign power of the people, committed by them as a sacred charge to this court, not to be exercised upon light occasion, or when other and ordinary remedies are sufficient, but to be wisely

used for the benefit of any citizen when an inferior court either refuses to act within its jurisdiction, or acts beyond its jurisdiction to the serious prejudice of the citizen."

Since that case was decided the nature of this power has been the subject of very much explanation, but hardly with the result of greater clearness or exhaustiveness than in the words just quoted. Some of the more important of the later cases are the following: *State ex rel. Mitchell v. Johnson,* 105 Wis. 90, 80 N. W. 1104; *State ex rel. Fourth Nat. Bank v. Johnson,* 105 Wis. 164, 83 N. W. 320; *State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226, 82 N. W. 158; *State ex rel. W. G. Taylor Co. v. Elliott,* 108 Wis. 163, 84 N. W. 149; *State ex rel. Coffey v. Chittenden,* 112 Wis. 569, 88 N. W. 587; *In re Gates,* 117 Wis. 445, 94 N. W. 292; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 107 N. W. 500; *State ex rel. Milwaukee E. R. & L. Co. v. Circuit Court,* 133 Wis. 442, 113 N. W. 722; *State ex rel. Milwaukee E. R. & L. Co. v. Circuit Court,* 134 Wis. 301, 114 N. W. 455.

It will be observed that one limitation upon the exercise of this power, stated in the first *Johnson Case* and many times reiterated, is the absence of any other adequate and sufficient remedy. 2 Spelling, Extr. Relief, § 1392; High, Extr. Leg. Rem. (3d ed.) § 177; *State ex rel. Meggett v. O'Neill,* 104 Wis. 227, 80 N. W. 447; *In re Gates, supra.* We, therefore, elsewhere in this opinion, without express reiteration, must be understood as intending that qualification in all cases where it may be stated the power exists. It is not material to the present case, for both parties concede and proceed on the assumption that if the acts of the circuit court here complained of are otherwise within reach of our superintending jurisdiction, exercisable by the writ of *mandamus,* other adequate remedy is wanting and that a case of exigent prejudice to public welfare is presented. *State v. Kemp,* 17 Wis. 669; *State v. Grottkau,* 73 Wis. 589, 41 N. W. 80, 1063; *Von Rueden v. State,* 96 Wis. 671, 676, 71 N. W. 1048; *U. S. v. Sanges.* 144 U. S. 310, 12 Sup. Ct. 609.

The present application is claimed to present a case where the circuit court refuses to act within its jurisdiction, for that, by reason of some preliminary consideration, it has declared that it has no right to proceed with the consideration of the charge against the accused. If that contention is sustained it will neither be necessary nor proper in the present case to attempt a disquisition upon or further definition of the jurisdiction of this court in other directions. That the act of the circuit court is a refusal to exercise its jurisdiction and perform its duty to consider the criminal charge against the accused seems too plain for discussion. He has declared that purpose most unambiguously, and, but for the stay entered to enable the application to this court, the accused would have been discharged: immune from further prosecution, it is said, because a new prosecution for his alleged offense is barred by the statute of limitations. Thus, *prima facie,* an obvious case is presented to which either a writ of *mandamus* or the old-time writ of *procedendo ad judicium* would be appropriate to command the circuit court to perform its duty to consider and judicially pass judgment upon the controversy instituted by this indictment. To this *prima facie* case it is responded that we cannot ascertain whether it is the circuit court's duty to proceed with the case without reviewing the obviously judicial determination made below that the indictment is void—clearly within the court's jurisdiction to resolve either way: a determination reached upon so clearly judicial acts as the weighing evidence and reaching conclusions upon disputed questions of fact, as also deciding uncertain questions of law as to the effect on the validity of the grand jury's action of the presence and participation of an unqualified person as a member of that grand jury. But this is no insuperable obstacle. This court is not universally restrained from reviewing acts done within the jurisdiction and judicial power of the inferior court in the exercise of superintending control. *State ex rel. Fourth*

*Nat. Bank v. Johnson,* 103 Wis. 623, 79 N. W. 1081; *State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226, 234, 82 N. W. 158; *State ex rel. Winchell v. Circuit Court,* 116 Wis. 253, 93 N. W. 16. True, it is frequently asserted that the writ of *mandamus* issued under the power of superintending control cannot be made to serve as a writ of error, and that when the lower court does take up any question for consideration and in its best judgment decides, it exercises jurisdiction and performs its duty, and there is nothing left but a supposed judicial error for review. High, Extr. Leg. Rem. (3d ed.) § 188; *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 623, 79 N. W. 1081; *State ex rel. O., A. & B. W. R. Co. v. Burnell,* 104 Wis. 246, 251, 80 N. W. 460. What limitations upon that rule appear in practical application of superintending control need not here be discussed, with one exception, which seems specially relevant to the situation before us. The courts are agreed, with but little failure of unanimity, that though the resolution of either a jurisdictional question or of a preliminary one, which precedes the consideration of the main controversy proposed to the court, may be judicial in character, none the less the court refuses to perform its duty to that controversy when it resolves the preliminary question adversely and refuses further action, and the superintending court is not precluded from considering whether or not that duty exists. There could not well be argument against the power to direct the lower court to proceed to consider a suit when its refusal to do so was arbitrary or based on no stated reasons, but the result to the party is the same when the court states such reasons; he is equally denied the judicial consideration and determination upon his controversy which the trial court owes him as a duty. It is generally true of all official action, by courts or other officers, that they are obliged, before proceeding to the performance of that official duty, to decide whether the condition exists which calls it into activity. A court must always inquire

whether the law either gives it the jurisdiction or imposes upon it the duty to entertain a given controversy, and must inquire into existence of facts, either of notice to one of the parties or of some other preliminary condition, upon which the law imposes on him the power and the duty. In so deciding, he of course acts judicially. Where that judicial action can be corrected by ordinary appellate procedure there may be no need for the exertion of the more extraordinary superintending control; but where it cannot, the result of an erroneous adverse determination of the preliminary question is an effectual refusal to perform his duty and exercise his jurisdiction, as complete and as injurious as if done arbitrarily and without reason. The courts, English and American, agree with practical unanimity that such preliminary decision, however judicial in character, may be reviewed under the superintending power, and, in case of erroneous decision thereof by the inferior court, the latter should be required, by *mandamus,* to proceed to perform its duty toward the principal controversy notwithstanding its decision upon the preliminary question. Merrill, Mandamus, §§ 203, 204; 2 Spelling, Extr. Relief, §§ 1394, 1403; High, Extr. Leg. Rem. (3d ed.) §§ 147, 151, 188; Hayne, New Tr. & App. § 323; *Temple v. Superior Court,* 70 Cal. 211, 11 Pac. 699; *Territory ex rel. Travelers' Ins. Co. v. Judge,* 5 Dak. 275, 38 N. W. 439; *Rex v. Justices,* 14 East, 395; *Rex v. Justices,* 1 M. & S. 190; *Reg. v. Dayman,* 7 E. & B. 672; *Reg. v. Brown,* 7 E. & B. 757; *Ex parte Lewis,* L. R. 21 Q. B. Div. 191; *In re Grossmayer,* 177 U. S. 48, 20 Sup. Ct. 535; *In re Connaway,* 178 U. S. 421, 20 Sup. Ct. 951; *State ex rel. Harris v. Laughlin,* 75 Mo. 358, 366; *State ex rel. Shannon v. Hunter,* 3 Wash. 92, 27 Pac. 1076; *State ex rel. Smith v. Smith,* 69 Ohio St. 196, 68 N. E. 1044; *Hoke v. Comm.* 79 Ky. 567; *Cassidy v. Young,* 92 Ky. 227, 17 S. W. 485; *Hill v. Morgan,* 9 Idaho, 718, 76 Pac. 323; *State ex rel. Keane v. Murphy,* 19 Nev. 89, 6 Pac.

840; *State ex rel. Spence v. Dick,* 103 Wis. 407, 79 N. W. 421; *State ex rel. Rowell v. Dick,* 125 Wis. 51, 103 N. W. 229; *State ex rel. Schutz v. Williams,* 127 Wis. 236, 106 N. W. 286.

There is some contrariety of opinion as to just what questions are preliminary under this doctrine, and when the lower court will be considered to have entered upon consideration of the merits of the controversy. The English and Kentucky cases above cited present antithetic decisions upon that distinction. The ruling of the trial court in this case, that the action of the grand jury was void and that no indictment exists against Biersach to arouse either power or duty in the circuit court to try him, is, however, clearly a preliminary one within the most restricted definition of that term. Obviously that court has stopped short not only of any consideration of the guilt or innocence of the accused, but even of those earlier considerations whether the facts stated in the indictment would if proved constitute any crime. We conclude that a situation is presented to arouse the jurisdiction of this court under its power of superintending control to command the lower court to proceed to perform its duty to judicially consider and decide upon the criminal charge made by this indictment; to try the case of *State v. Biersach;* if, indeed, not precluded from so doing by invalidity of the indictment—a question we proceed to consider.

The evidence upon which the circuit court acted, while somewhat extended, may be summarized as follows: The jury commissioners met at the December, 1903, term of the municipal court of Milwaukee county and proceeded to select at least seventy-five persons whose names should be placed upon a list from which grand jurors should be drawn. They made such selections, the names being written under their direction by one Mr. Wieber, who acted as the clerk of the jury commissioners. Upon this list was set the name "George J. Davies." The law required no further designation; but

against each name was set a place of residence, and against the name George J. Davies was set "663 38th Street." In 1904, when a grand jury was ordered to be called, the jury commissioners convened, being still assisted by Mr. Wieber as their clerk, and slips bearing names taken from said list were put into a box, and, among others, a slip on which was first written in Wieber's handwriting "George J. Davies, 2825 Cedar Street," upon which, at the time of the trial of this plea in abatement, there appeared a pencil line drawn through that street and number, and pencil marks placed below it reading "663 38th Street." This slip was one of the seventeen drawn from the box, whereupon from said slips a list of the seventeen persons to constitute the grand jury for that term of court was written out under the direction of the commissioners and certified by them to contain the names of those who should constitute that grand jury, and upon this list appeared the name "George J. Davies, 663 38th Street," the law not requiring any other designation than merely the name. A venire was made out containing the same name and the same street number and was by the sheriff served upon John George Davies, who resided at the place specified, the return, however, stating that it was served personally upon the person named in the venire. John George Davies attended, answered as to his qualifications, and was sworn and served as a juror. Before being sworn he informed the clerk, apparently without the knowledge of the court or of the jury commissioners, that his correct name was J. George Davies instead of George J. Davies, and thereafter it so appeared upon the clerk's books. It appeared without dispute that the juror was commonly known amongst acquaintances as George Davies; that while he used the signature J. George he considered George his Christian name, and, not infrequently, he had been designated in correspondence and otherwise as George J. It further appeared without dispute that he had all other qualifications for service as a grand

juror except the one of having been selected for the jury list by the jury commissioners. On the other hand, there was produced a man whose name was George Jeremy Davies, who passed by the name of George Davies, and whose usual signature and designation in writing was George J. Davies, who lived at 2825 Cedar street, and who also possessed all the requisite qualifications of a grand juror except that of having been selected by the jury commissioners. He had some slight acquaintance with one or two of the jury commissioners, while John George had no acquaintance with them.

The foregoing states substantially all of the material facts from which the circuit court had to decide that the man who was called and did serve on the grand jury was not the person who had been selected for the jury list by the jury commissioners. The use of a middle initial, while it is said to have no significance in law, may of course under some circumstances be very significant of the identity of the person named; but that significance varies very much with circumstances, and the misplacement of an initial used by one whose current Christian name is also used is so probable and frequent an occurrence, at least among those whose acquaintance with him is not exact and intimate, that its significance is very much diminished. While the jury commissioners had no official duty to state the place of residence of the man whom they selected, the fact that they did state it is none the less significant of the identity of the man whom they had in mind in placing the name on the jury list, and we think is of so vastly greater weight than the mere transposition of the letter "J" in this name, as to entirely outweigh it; but when we add to this the apparent fact that the same jury commissioners, in the process of preparing the slip for insertion and withdrawal from the box and the record of it on the list of the grand jury actually drawn, discovered that the George J. Davies who appeared by the directory to live on Cedar street had apparently been designated thereon and industriously

caused such designation to be removed and to be substituted therefor the residence on Thirty-eighth street, we cannot avoid the conviction that it was established by overwhelming preponderance of evidence that the George Davies who lived at that place and who appeared in court in response to the venire in the presence of the jury commissioners and was accepted in answer to that name was the identical person whom those commissioners had selected as suitable for grand jury service. Hence, without discussing the effect of the presence and participation of the wrong man on the grand jury, we must conclude that the fact was not established, and that the circuit court erred in holding the indictment invalid.

It is further urged that the relief sought in this proceeding is the vacation of a certain order and that *mandamus* is not the proper remedy therefor. *State ex rel. Pfeiffer v. Taylor,* 19 Wis. 566; *State ex rel. W. G. Taylor Co. v. Elliott,* 108 Wis. 163, 84 N. W. 149; *State ex rel. Winchell v. Circuit Court,* 116 Wis. 253, 93 N. W. 16. This contention is based upon a misapprehension. The real and practical purpose, and obviously the primary one, is to require the circuit court to perform its duty to consider and decide upon the criminal charge presented, which it has refused to do. The fact, if it be such, that some orders theretofore made in that court constitute a formal obstacle to his so doing, merely invites an enlargement of the command which this court shall issue to the effect that the trial court take formal action necessary to remove those obstacles, as ancillary to and in aid of the primary relief sought and granted. That was the exact situation in both of the *Johnson Cases,* where the thing commanded was obstructed by certain orders entered by the court, and it was urged that they could not be reversed by *mandamus,* even to enable the performance of an act which the court's duty required. The court said (103 Wis. 624, 79 N. W. 1091):

"This court holds its power under no such uncertain terms. Those powers are not dependent upon the speed with which

the trial court enters orders. If it becomes necessary, in the due discharge of its power of superintending control, that orders of the inferior court be vacated, this court will not hesitate to compel the vacation of such order by the inferior court by so framing its writ of *mandamus.*"

The same distinction was also noted in the opinion in *State ex rel. W. G. Taylor Co. v. Elliott,* 108 Wis. 164, 84 N. W. 149. When, therefore, it is concluded that the circuit court should be directed to proceed with his duty as above stated, it is entirely within the power of this court to command that he remove any obstacles to such proceeding which his own improper acts have erected. The command of the alternative writ goes no further than this.

We understood respondent to concede that nothing material could be added to the petition and alternative writ by return, so that therefore the merits might be decided on the present hearing.

*By the Court.*—Let imperative writ issue.