PENOBSCOT RAILROAD COMPANY vs. GIDEON MAYO.

*Trusts—discharge of. How enforced by cestui que trust, using the name of the trustee.*

If a *cestui que trust* be induced by fraud to discharge the trust, it must be considered as extinguished so far as an innocent purchaser of the trust-property, who buys relying upon the discharge, is concerned.

But if a person whose own note is deposited in trust for others, among whom its proceeds are to be divided, obtain possession of it without the consent of the *cestuis que trust*, an action for money had and received brought against him, in the name of the depositary, by and for the benefit of one of those entitled to a share of the amount due on the note, is maintainable ; nor can the suit be discontinued by the nominal plaintiff, or his assignee without the assent of the party in interest.

THE PLAINTIFFS' writ contains three counts, to wit:

1. Upon the following account annexed :

1870.   GIDEON MAYO TO THE PENOBSCOT RAILROAD CO.   DR.

| | |
|---|---:|
| To amount collected by you, of different individuals, not paid over or accounted for by you, | $2,000 |
| To $68,700 Penobscot Railroad Bonds belonging to plaintiffs, at 33⅓ per cent, which you sold and received the money for, to the European & North American Railway Co., October, 1863, | $22,900 |
| To notes and cost in addition to the above, | 7,500 |
| To interest on the above, | 8,000 |
| | $40,400 |

2. For $60,000, money had and received.

3. Upon note of defendant to plaintiffs or order for $4,000, dated May 28, 1862, payable in one year with interest.

This suit is instituted, in the name of the plaintiff corporation, by and for the benefit of Nathaniel Wilson. To maintain it testimony tending to prove the following facts was introduced by the

plaintiff. All acts relating to the organization of the railroad company, and its corporate action in accepting the same and establishing by-laws, electing officers, etc. That of $300,000 worth of bonds, issued to aid in the construction of the road, $68,700 were left unsold in the hands of the company and were, in November, 1855, conveyed and delivered in trust to E. P. Butler to secure Wilson and others for advances. That, subsequently, the defendant, who was president of the company of which said Wilson was a director, by certain false and fraudulent representations, made for this purpose, obtained a delivery of these pledged bonds to himself, under the color of a sale, giving for them the note mentioned in the third count of the plaintiff's writ; and, by the same means, Mayo procured the discharge of Butler from his trust, and the assent of the beneficiaries thereto, it being agreed that the note should be held by the treasurer to secure Wilson and others for advances to the road, and that when paid the money should be divided ratably among these persons. Subsequently, without the knowledge and consent of Wilson, and by other fraudulent representations (as is alleged), Mayo procured the surrender to him of his note without payment of any part of it.

By c. 321 of the Special Laws of 1864, the European & North American Railway Company succeeded to all the rights of the plaintiff-corporation, its existence being continued to preserve the interests of the first-named company. By consent the defendant introduced, subject to legal objection, a release of this action by the European & North American Railway Company.

The plaintiff moved for a nonsuit which was granted, to be taken off or confirmed as the court may find the legal rights of the parties.

*N. Wilson*, pro se.

*Charles P. Stetson*, for the defendant.

The nominal plaintiff is merged in the European & North American Railway Co., and that company has succeeded to all the plaintiff's right's and property, including this claim; hence this ac-

Penobscot Railroad Company *v.* Mayo.

tion cannot be maintained without the consent of the European &
North American Railway Co. *Adams Bank* v. *Jones,* 16 Pick.
575 ; *Ashuelot Manuf. Co.* v. *Marsh,* 1 Cush. 507.

Mayo was president and trustee for the R. R. Co. *European &
No. Am. Railway Co.* v. *Poor,* 59 Maine, 277.

Wilson's remedy, if any, is in equity.

APPLETON, C. J. This action is brought for the benefit of
Nathaniel Wilson, and the material question is as to his right to
prosecute the same.

On July 15, 1863, a lease from the plaintiffs of all their estates,
real, personal, and mixed, to the European & North American
Railroad Company for the period of nine hundred and ninty-nine
years, was signed by the defendant as president of the plaintiff cor-
poration, and by John A. Poor as president of the European &
North American Railroad Company, and the seals of the respec-
tive corporations duly affixed.

This lease, at a meeting of the directors of the European &
North American Railroad, held on the same day, was ' approved,
ratified, and confirmed.'

At a meeting of the directors of the plaintiff corporation held
on the same day it was voted, ' that an instrument dated this day,
in the nature of a lease . . . is hereby approved, ratified, and con-
firmed as the act and deed of said Penobscot Railroad Company,'
subject to certain conditions specified in said vote, and authority was
given to a majority of the directors, in a certain contingency, to
' authorize the delivery of said instrument ; otherwise and unless a
majority of said directors concur in the delivery, said instrument
shall not be delivered and shall be and become null and void.'

At this meeting but three directors were present, one of them
being Nathaniel Wilson.

At a meeting of the directors of the plaintiff corporation held
Feb. 1, 1864, Nathaniel Wilson, a director, being present, full au-
thority was given the defendant, as president of the corporation,
' to complete the execution of the contract and lease, made by and

between said company and the European & North American Railroad Company, dated July 15, 1863, and now in his hands, and make delivery of the same and of all documents and other writings necessary to carry the same into full execution and effect.'

As a majority of the directors were required to authorize the delivery of the lease, and as the vote of Wilson was necessary to constitute that majority, and as there is no evidence of his dissent or refusal to act, we may well presume that his concurrence was had in the vote as recorded.

By a special act, c. 321, approved Feb. 20, 1864, the instrument or lease of July 15, 1863, received the sanction and approval of the legislature, and after reciting that the European & North American Railway Company had acquired all the estates of the Penobscot Railroad Company of every description, it was enacted by § 5 that ' the rights and properties held by said Penobscot Railroad Company shall hereafter be vested in said European & North American Railway Company, and shall remain in full force and efficiency unannulled and unimpaired, by any subsequent defeat or dissolution of the Penobscot Railroad Company, whether by limitation of the time in which the road should be completed, or by any other means.'

As the charter of the plaintiff corporation would otherwise have expired by lapse of time, it was further enacted in the same section that it should ' be regarded as still subsisting, so far as its continuance for the purpose of upholding any right, title, or interest, power, privilege, or immunity ever possessed, exercised, or enjoyed by it, may be necessary for the protection of the European & North American Railway Company, its exercise of the powers and its enjoyment of the privileges and immunities so transferred, being suspended so long as the European & North American Railway Company shall exercise and enjoy them.'

It is thus seen that all claims of the plaintiff corporation against the defendant, of every description, were transferred to and became vested in the European & North American Railway Company, with the knowledge and approval of Wilson, the only plaintiff in interest, or at any rate without objection on his part.

The interest on the claim in suit having thus become vested in the European & North American Railway Company, that company settled and adjusted all claims against the defendant, as appears by a vote of their directors at a meeting held on Oct. 14, 1870, and directed this suit to be discontinued. The plaintiff corporation having no interest in the demand in suit,—having assigned the same to the European & North American Railway Company and existing for the purpose of upholding their interests, and they having settled and adjusted this suit,—it remains to be seen why it should be further prosecuted.

It certainly cannot be prosecuted further for the benefit of the nominal plaintiff. It remains to be seen what rights Mr. Wilson may have for its further prosecution for his benefit.

It seems that Wilson, prior to Nov. 21, 1855, with others, had become liable for the plaintiff corporation, as surety, and had advanced funds on their account, and that at a meeting of the directors, Gideon Mayo, Israel Washburn, jr., Nathaniel Wilson, and Eben Webster being present, it was voted ' to transfer, assign, and convey to E. P. Butler of Orono, in his individual capacity and not as treasurer,' certain second mortgage bonds in trust, among other things, ' to pay all and singular the sums advanced or paid for the company, as aforesaid,' etc.

By this vote the second mortgage bonds were held by E. P. Butler, the treasurer of the plaintiff corporation, in his private capacity as a trustee of Wilson.

But at a subsequent meeting of the directors, Butler, as trustee, was discharged from his said trust, and on April 10, 1862, Mayo, Webster, Wilson, and Washburn by their writing, directed to said Butler, discharged him from said trust, using therein the following language, ' We each of us for himself and others hereby release and discharge you from said trust, and request you to deposit the same with the treasurer of said company for the use and benefit of said company, and to be held for such other and further action of the said company, as they may order and direct.' It thus appears that the bonds held in trust were thereafter to be held freed from any trust and as the property of the plaintiff.

At the meeting on April 10, 1862, it was voted that the bonds held by the treasurer, being sixty-eight thousand seven hundred dollars (being the amount of part of the claim sued for) should be delivered to Gideon Mayo, president of the company, 'to be used by him, the said president, for the company, as he shall deem expedient.'

As Mr. Wilson released and discharged the trust created for his benefit, he would seem, at law, to be estopped to claim it as still subsisting.

At a meeting of the directors of the plaintiff corporation, held May 28, 1862, Mayo, Wilson, and Webster being present, it was voted to sell all the bonds in Mayo's hands to him for his note for the sum of $4,000, and that the 'note be retained by said treasurer as security to the directors for the several amounts by them advanced to said company, and now due them, as individuals, from said company, and when collected shall be divided to said directors in proportion to the sum actually due each.'

At a meeting of the directors of the plaintiff company, held July 13, 1864, it was voted that the directors cancel the note given by Mayo May 28, 1862, for $4,000, and deliver the same to him; and further, to deliver over to the European & North American Railway all deeds of right of way, and all other demands and property of every kind belonging to this company, agreeable to the contracts of the two companies and the act of the legislature passed last winter.

It is urged that the trust, created Nov. 21, 1855, by which certain bonds were transferred to Butler for the security of the plaintiff and others, was discharged through the fraud and misrepresentation of the defendant. So be it. The first trust was discharged by the action of Wilson. The discharge appeared on the record of the company as well as under his hand. There is no evidence that the European & North American Railway knew of this fraud or were in any way parties to it. They contracted in good faith, relying upon the records of the plaintiff corporation and upon the written discharge of the trust by Wilson, and had a perfect right

to the bonds previously held in trust, and to hold them discharged of all trust.

The only remaining subject of inquiry is the note for $4,000 of the defendant of the date of May 28, 1862, which was surrendered by a vote of the directors of July 13, 1864, at which Wilson was not present. This note, it will be observed, was to be retained by the treasurer as security to the directors for their unpaid advances and in proportion to such advances. The treasurer therefore held this in trust for Wilson and others, but as the division was not to be made until collected, it is obvious the plaintiffs, to whom it was payable, were to enforce its collection.

The plaintiff in interest, Wilson, offers to show that this note, without his knowledge or consent, was surrendered to Mayo without payment, in consequence of his false and fraudulent misrepresentations to the plaintiff corporation. The other directors, who were equitable assignees, could not, by any vote of theirs, deprive Wilson of his claim upon the security retained in part for his benefit.

Assuming the facts to be as they are offered to be proved, the defendant owes the plaintiff corporation $4,000, of which Wilson is equitable assignee to the extent of his proportional share of the advances made by the directors. True, the note has been given up through the defendant's fraud, as the plaintiff offers to prove, but it is none the less due. A recovery may be had on a note lost or destroyed. *Moore v. Fall*, 42 Maine, 450. The liability of the defendant continues. A cancellation of a note, by and through the fraud of the maker, cannot protect him.

When the lease was made by the plaintiffs to the European & North American Railway on July 15, 1863, the note had been equitably assigned to the directors of the plaintiff company, and was to be retained by their treasurer for the security of such directors. This appears by their records. It did not, therefore, pass to the lessees. It follows, therefore, that the release of the European & North American Railway cannot avail the defendant so far as relates to the interest of Wilson, the equitable assignee in this note.

The plaintiff corporation is not absolutely dissolved. Besides, there is no plea of *nul tiel corporation* in abatement. By pleading the general issue, the defendant admits the legal capacity of the plaintiff to maintain this action. *Ministerial and School Fund in Dutton* v. *Kendrick*, 3 Fairf. 381. *Savage Manuf. Co.* v. *Armstrong*, 17 Maine, 34.

The note being assigned, the equitable assignee has a right to use the name of the assignor to enforce its collection, at any rate, to the extent of his proportional interest.

*Exceptions sustained.*

CUTTING, KENT, WALTON, and BARROWS, JJ., concurred.