State ex rel. City of Milwaukee and another vs. Ludwig.

THE STATE EX REL. THE CITY OF MILWAUKEE and another vs. LUDWIG, Judge, etc.

*February 27 — March 20, 1900.*

*Discontinuance of action: Denial of leave: Jurisdiction: Supreme court: Superintending control: Mandamus.*

1. The service and filing, by plaintiff, of a notice of discontinuance does not of itself, without judicial action thereon, terminate the action and deprive the court of all jurisdiction therein. The court may and should consider the effect of a discontinuance upon the rights of others, and for the protection of such rights may deny an application for leave to discontinue, and may substitute another plaintiff. A remark in *Noble v. Strachan*, 32 Wis. 314, overruled.

2. In the exercise by the supreme court of its superintending control over inferior courts the writ of *mandamus* will not be used to perform the functions of appeal or writ of error. In order to justify the issuance of the writ the duty of the lower court must be plain, the refusal to proceed within its jurisdiction to perform that duty must be clear, the results of such refusal prejudicial, the remedy, if any, by appeal or writ of error utterly inadequate, and the application for relief by *mandamus* speedy and prompt.

3. A lotowner, on behalf of himself and others, brought an action to restrain a street railway company from accepting an ordinance authorizing extensions of its lines and from constructing one of such extensions along the street in front of his lots. He obtained an injunction *pendente lite*, and defendants moved to vacate it and also secured an injunction restraining plaintiff and all other taxpayers and abutting owners from commencing any similar suit until the determination of said motion. Before such determination plaintiff, acting through attorneys other than his attorneys of

record, attempted to discontinue his action under circumstances calculated to arouse suspicion of collusion with defendants. The court permitted plaintiff to withdraw from the action, but refused to allow it to be discontinued, and, on motion of plaintiff's attorneys of record, substituted as plaintiff the owner of land abutting on another street, similarly affected by the ordinance, with leave to adopt the complaint or file a new pleading. *Held*, that under the circumstances the supreme court would not interfere by *mandamus* to reverse the decision of the lower court and compel the dismissal of the action.

MANDAMUS to J. C. LUDWIG, Judge of the Superior Court of Milwaukee County. *Peremptory writ denied.*

A few days after the suit of *Schwartzburg v. The Mayor and Aldermen of the City of Milwaukee*, which is quite fully described in the opinion in the case of *State ex rel. Rose v. Superior Court*, 105 Wis. 651, there was commenced by the same attorneys a suit in the name of Trentlage against the city of *Milwaukee* and the *Milwaukee Electric Railway & Light Company*, which appears to have been instigated by the same persons who were responsible for the Schwartzburg suit, and the complaint in which embodies a large part of the complaint in that action, and was addressed principally toward enjoining the defendant street railway company from accepting the ordinance, the passage of which was attempted to be restrained by Schwartzburg. The plaintiff, Trentlage, describes himself as a resident, citizen, elector, and taxpayer in the city of *Milwaukee*, and as owning two described lots abutting on, and extending to the center of, First avenue, in said city, and declares that he brings this action in his own behalf and in behalf of all other taxpayers and abutting owners in said city similarly situated. The complaint also, in addition to the allegations as to the passage of the ordinance, adopted largely from the Schwartzburg complaint, alleges that one of the extension lines proposed to be authorized by said ordinance extends along First avenue, and in front of the plaintiff's premises, and that a build-

ing in pursuance thereof will involve a widening and grading of that street, and the incumbering of the same, across his premises, with poles, wires, and tracks. The relief demanded was that the railway company be restrained from accepting said ordinance, or doing any act to accomplish such acceptance, or entering upon any part of the premises of the plaintiff, or widening said First avenue, or laying tracks or erecting poles or wires thereon, and further prayed that the grant by the common council be set aside and annulled, as invalid. An injunction *pendente lite* was secured, substantially covering the ground of the prayer of the complaint, and motion to vacate the same was made.

The motions to vacate the injunctions in the Trentlage case and the Schwartzburg case were taken up very much together by the court, and the affidavits and other proceedings in the two cases seem to have been very much interwoven. In the course of those motions the defendants had secured an omnibus injunction restraining the commencing of any other suits or taking of any steps, except to discontinue, in the Trentlage case or any other case, until the disposition of the pending motions to vacate the injunctions. As the argument on those motions was approaching conclusion, and on the 29th day of January, 1900, while the court was engaged with the hearing of the motion to vacate in the Trentlage case, the plaintiff, Trentlage, attempted to present to the court, by an attorney not of record, a discontinuance of his suit, in the following words:

" I, J. G. Trentlage, plaintiff in the above-entitled action, hereby dismiss and discontinue the action above entitled, and consent that an order be entered to that effect without further notice.

" To the *City of Milwaukee* and the *Milwaukee Electric Railway & Light Company*, defendants above mentioned."

The attorney, Mr. Sheridan, of the firm of Sheridan & Wollaeger, also attempted to present a power of attorney

State ex rel. City of Milwaukee and another vs. Ludwig.

authorizing his firm to effect a dismissal of the action, and in terms revoking the authority of the plaintiff's attorneys of record. He also had an affidavit by Trentlage to the general effect that he had been led by misrepresentations to lend his name as plaintiff in that suit. The court declined to permit the pending matters to be interrupted, and did not receive into consideration the proposed discontinuance that day. At the adjournment of court, the plaintiff filed it with the clerk.

On the following day, January 30th, the defendants presented the same notice of discontinuance, and asked for an order of dismissal, whereupon Mr. Timlin, attorney of record for the plaintiff, presented a petition for the substitution of the Linden Land Company as plaintiff to continue the suit, accompanied by an affidavit that the Linden Land Company was the owner of lands abutting on Locust street, over which another provision of the ordinance granted franchise to construct tracks, obviously entirely distinct from the line over First avenue. The court, after hearing argument, held that the Trentlage suit had no standing as a taxpayer's suit, but that a cause of action was stated in the interest of himself as an abutting owner upon a street likely to be affected by the building of extensions authorized by the ordinance, and as a suit to restrain injury to the plaintiff in that capacity, and others similarly situated, the action might be sustained. He thereupon granted the application of the plaintiff for discontinuance, to the extent of permitting him to withdraw as plaintiff, but refused to dismiss the suit, and made an order continuing the same in existence and introducing the Linden Land Company as plaintiff therein on behalf of itself and others similarly situated, with leave within a certain time to either adopt the complaint verified by Trentlage or to file its own complaint.

On relation of the defendants an alternative writ of *mandamus* was granted, commanding the respondent that im-

State ex rel. City of Milwaukee and another vs. Ludwig.

mediately upon the receipt of the writ he set aside and vacate the above-described order of January 30th, denying the defendants' motion that the Trentlage suit be dismissed and granting the petition of the Linden Land Company to be joined as plaintiff therein, and that he enter an order, upon the defendants' motion, dismissing the Trentlage action. Due return was made, from which, together with the papers therein referred to, the foregoing facts appear, among others not deemed important.

For the relators there were separate briefs by *Winkler, Flanders, Smith, Bottum & Vilas* and *Miller, Noyes, Miller & Wahl*, of counsel, and oral argument by *Geo. P. Miller, J. G. Flanders*, and *Hugh Ryan*. To the point that the rule under which a plaintiff has an absolute right to discontinue is the same where the action is brought on behalf of himself and all others in a similar situation, so long as none of the "others" have come into the case and actually become parties thereto, they cited 1 Daniell, Ch. Pl. & Pr. (5th Am. ed.), 794; *Piedmont & A. L. Ins. Co. v. Maury*, 75 Va. 508; *Innes v. Lansing*, 7 Paige, 583; *Beals v. W. U. Tel. Co.* 53 Neb. 601; *Handford v. Storie*, 2 Simons & S. 197; *Day v. Buckingham*, 87 Wis. 215, 221; *Hirshfield v. Fitzgerald*, 157 N. Y. 166; 6 Ency. of Pl. & Pr. 853, 854.

For the respondent there was a brief by *Toohey & Gilmore* and *Timlin, Glicksman & Conway*, and oral argument by *W. H. Timlin*.

Dodge, J.    1. In this case we are solicited to exercise that superintending power of the supreme court over inferior courts which was recently discussed and described at length in *State ex rel. Fourth Nat. Bank v. Johnson*, 103 Wis. 591, and it is asserted that the conduct of the court below justifies and requires the exercise of either of two phases of that power: First. That to enforce the *jurisdiction* of inferior courts, either by prohibiting acts outside of their jurisdic-

tion, or commanding them to proceed to its exercise in cases of refusal. Illustrations of this phase are found in *State ex rel. Att'y Gen. v. Eau Claire Co. Cir. Ct.* 97 Wis. 1; *State ex rel. C. & N. W. R. Co. v. O., A. & B. W. R. Co.* 100 Wis. 538; *State ex rel. Meggett v. O'Neill,* 104 Wis. 227, and *State ex rel. Rose v. Superior Court,* 105 Wis. 651. Under this head it is urged that the plaintiff had the absolute right to discontinue his action, and that by the filing of the notice the discontinuance was accomplished, and the case no longer had any existence. Of course, if the case were so out of court and nonexistent, no jurisdiction would exist to make any order or take any step, any more than as if no suit had been commenced; and the attempted retention of and procedure in it would have been a usurpation of power, which, if sufficiently injurious and incapable of other remedy, might invite interference by this court.

The first subject of inquiry, then, is whether the suit of Trentlage against the *Milwaukee Electric Railway & Light Company* was in court — whether it had any existence as an action — on the 30th day of January, after the plaintiff's notice of discontinuance had been delivered to the defendants and filed with the clerk. The negative of this proposition is hardly asserted in the briefs, but was substantially contended for upon the oral argument, and such contention was supported by quotation from certain decisions of this court,— notably, *Spaulding v. M. & H. R. Co.* 12 Wis. 607; *Bertschy v. McLeod,* 32 Wis. 205; *Noble v. Strachan,* 32 Wis. 314; *Juneau Co. v. Hooker,* 67 Wis. 322. Upon careful examination, none of these cases, except, perhaps, *Noble v. Strachan,* furnishes support for the position so taken, namely, that the act of the plaintiff in formally declaring his election to discontinue did *ex proprio vigore* terminate the suit and deprive the court of all *jurisdiction* to take any judicial action with reference thereto. In *Spaulding v. M. & H. R. Co.* an *order* of discontinuance had in fact been en-

tered.   True, it was a mere side-bar order entered *ex parte* by the clerk, as then authorized; but it was ostensibly, at least, the act of the court, effectuating plaintiff's election to discontinue.   This court declined to decide whether even that order sufficed to terminate jurisdiction of the circuit court over the proceedings, but held that, whether so effective or not, the situation constituted no ground for staying another suit commenced by the plaintiffs.   In *Bertschy v. McLeod* the right of a plaintiff to discontinue his action is asserted, but the discontinuance in that case was held to have been accomplished by *the order*, which, as in the preceding case, was entered *ex parte* by the clerk, but, of course, was ostensibly judicial action, the same as is a judgment entered on default by the clerk under present practice statutes.   In *Juneau Co. v. Hooker* a notice of discontinuance was served on the defendants, and in open court, though *ex parte* on application of plaintiff, the court orally directed discontinuance to be entered on the minutes.   On plaintiff's attempt to reinstate the case, urging informality of the oral order of discontinuance, this court denied such application, holding that: "An entry by the clerk in his minutes of the judicial action of the court is sufficient evidence thereof.   A formal order signed by the judge was not necessary.   An order entered on the minutes of the clerk is sufficient for a full discontinuance of the case."

It will thus be seen that in all these decisions the court recognized the efficacy and the necessity of judicial action to completely accomplish discontinuance.   This view is enforced in many other decisions, in some of which are discussed the considerations which render proper or improper the complete dismissal of a suit upon plaintiff's application, or even on consent of all parties to the record.   *Morris v. Baker*, 5 Wis. 389; *Selleck v. Phelps*, 11 Wis. 380; *Wakeley v. Delaplaine*, 15 Wis. 554; *Howard v. Osceola*, 22 Wis. 453; *Hutchinson v. Paige*, 67 Wis. 206; *Grignon v. Black*, 76

Wis. 674, 685; 1 Beach, Mod. Eq. Prac. § 460; *Thomas v. Thomas*, 3 Litt. 9; *Penobscot R. Co. v. Mayo*, 60 Me. 306; *Hanchett v. Ives*, 133 Ill. 332; *McLain v. Draper*, 109 Ind. 556; *Winans v. Winans*, 124 N. Y. 140; *Belmont N. Co. v. Columbia I. & S. Co.* 46 Fed. Rep. 336; *McAden v. Jenkins*, 64 N. C. 796; *La Tourette v. Fletcher*, 6 App. Cas. (D. C.), 324.

From these authorities it is obvious that, when a plaintiff attempts to exercise his so-called absolute right to discontinue an action prosecuted by him, varied and numerous considerations may need to be weighed by the court before reaching its conclusion whether to allow or deny effect to such attempt. The effect of a termination of the suit upon others, either the defendant or third parties, or sometimes the public, is to be considered, and, if any prejudice to such persons is discoverable, whether it is such as to warrant retention of the suit. We need not now discuss, or express approval or otherwise of, the conclusions reached in these cases. It suffices for the present subject to illustrate the frequency with which reasons need to be, and are, weighed by the courts; thus establishing that a judicial function is necessarily exercised whenever a plaintiff seeks to withdraw a suit once commenced. The duty and power to examine, consider, and decide is jurisdiction. Such duty and power were cast upon the superior court when application was made to it for an order discontinuing the present suit, and its determination to deny that application, and to continue the suit for the protection of some one else, was not an act beyond jurisdiction; nor was it a refusal to exercise its jurisdiction, for the judge duly considered and decided.

In the light of the foregoing, it is obvious that the remark found in the opinion in *Noble v. Strachan*, 32 Wis. 314, "I think that the order denying the application for leave so to discontinue is a nullity, and may be disregarded entirely," is inaccurate. It is contrary to the reason and im-

plication of every other case in this court, and must be overruled. We so overrule it the more readily for the reason that it is purest *obiter dictum*, delivered in a case of which, by reason of defects in the appeal, this court decided that it had no jurisdiction, and apparently, from the phraseology, was merely an expression of the personal opinion of the learned justice who delivered the decision of the court, which was based on other grounds.

2. But it is urged, though the inferior courts be acting within their jurisdiction and exercising merely the judicial powers with which they are vested, this court should interfere " to control the course of ordinary litigation in such inferior courts," " not only by restraining their excesses, but by quickening their negligence and obviating their denial of justice." That such power is vested in this court cannot be denied, nor that from such power results a duty to exercise it fearlessly and unflinchingly in a proper case. On the other hand, however, it must not be forgotten that the circuit courts of the state, and the superior courts of Milwaukee county, are the courts of original jurisdiction, wherein it is the plan of the constitution that the rights of parties in general shall be litigated and adjudicated, subject to correction of errors by this court when its appellate jurisdiction is invoked. In those courts is vested, *ex necessitate*, broad discretion. Around the selection of the judges who are to administer them are thrown most careful safeguards, and upon them is reposed a responsibility and confidence of a very high order. There can be no doubt that the framers of the constitution indulged in the most confident presumption that those courts would be presided over by men of high learning, ability, and integrity; and that confidence and presumption has been well verified by the result throughout the state. No more fitting and striking eulogy could be pronounced than the summary of the judicial experience of the state suggested by Mr. Justice WINSLOW in *State ex rel.*

*Fourth Nat. Bank v. Johnson,* 103 Wis. 616, in pointing out that, in the half century since the constitution was adopted, but three or four instances had occurred of such departure from duty by the circuit courts as to require the exercise of the superintending control vested in this court. If justice is to be not unduly burdened with delay and expense, it must be dispensed by the lower courts, their administration of the details of litigation must in the main control, and the judges who administer those details must feel that on them rests the responsibility for any wrong resulting to litigants from their acts. If that sense of responsibility be diminished by frequent interference and direction from this court, the reflex effect upon the trial courts themselves, and upon the high respect in which they should be held by the community, will be most prejudicial. Such considerations must weigh strongly to deter us from hastening to assume such responsibility and to control or dictate under our superintending power in individual cases even of apparent hardship.

These remarks are indulged in because of the apparent impression that this court has recently found or declared a new field of jurisdiction and activity, in which, promptly, without waiting for final determination of the court below, and without the formalities of procedure insisted on in appeals to give to each party adequate information of the contention of the other and opportunity to prepare and present his own, any dissatisfaction over the conduct of a trial court may be examined, and its course directed, although thereby may be hastily adjudicated the whole merits of the litigation in advance. This is a mistaken impression. The court has neither found nor declared any new power or new jurisdiction. It did, in *State ex rel. Fourth Nat. Bank v. Johnson, supra,* but add one more to the very few instances in which a recognized constitutional power was found necessary to be exercised. We said upon this subject in *State ex rel. Meggett*

*v. O'Neill,* 104 Wis. 227: "As the ordinary appellate revisory powers of this court have been found sufficient in the past, with extremely rare exceptions, it is believed that in the future emergencies transcending their sufficiency will seldom occur." In that confidence we still rest, trusting that the ensuing half century will be no more prolific of instances of misconduct of trial courts requiring correction otherwise than on appeal.

Not the least important of the utterances of this court in *State ex rel. Fourth Nat. Bank v. Johnson, supra,* are the declarations of the limits which we ought to and shall impose on ourselves in the exercise of the powers there discussed. We declared that such jurisdiction was "not to be exercised on light occasion, or when other and ordinary remedies are sufficient" (p. 618), and said further: "It is not meant by this, however, that *mandamus* will be used to perform the functions of appeal or writ of error, as seems to have been the tendency in the supreme courts of Alabama and Michigan. The duty of the court must be plain, the refusal to proceed within its jurisdiction to perform that duty must be clear, the results of such refusal prejudicial, the remedy, if any, by appeal or writ of error utterly inadequate, and the application for relief by *mandamus* speedy and prompt, in order to justify the issuance of the writ."

The few instances of the actual exercise of the superintending control serve to emphasize these restricted limitations. In *State ex rel. Att'y Gen. v. Eau Claire Co. Circuit Court,* 97 Wis. 1, and *State ex rel. Rose v. Superior Court,* 105 Wis. 651, the court below was proceeding, wholly without jurisdiction, to adjudge guilt of criminal contempt upon citizens, and to impose upon them punishment as criminals,— an invasion of the highest of individual rights, of which the sentimental aspect, at least, would be irreparable and remediless. In *State ex rel. Brownell v. McArthur,* 13 Wis. 407, *State ex rel. Spence v. Dick,* 103 Wis. 407, and *State ex rel. Mitchell v. John-*

*son*, 105 Wis. 90, there were presented refusals of the court to make orders, changing venue in the first two and of dismissal in the last, which were made the imperative duty of the court by statutes so absolute in terms as to leave not only no room for discretion but none for the exercise of judicial consideration. While the acts sought to be compelled were technically within the jurisdiction of the circuit court, the refusal of them was not appealable, and injury therefrom was obvious and grievous. In the two recent cases (*State ex rel. Fourth Nat. Bank v. Johnson*, 103 Wis. 591, and 105 Wis. 164) a most extraordinary exigency was presented. Not only were the orders sought to be compelled by *mandamus* so clearly enjoined upon the circuit court as to leave for it neither discretion nor judicial consideration, but the whole record showed such misconception by the court as to the relative importance and dominance of the interests of the respective parties, and such a series of judicial acts in effect, at least, substantially rendering abortive any efforts, not alone to vindicate, but even to litigate, the dominant rights of creditors, that this court deemed summary and radical action essential to recall the circuit court from a wholly erroneous policy. The consideration, ordinarily so cogent, that the acts complained of might have been reviewed on appeal, was overcome in those cases by the fact that, before appeals could be heard, rights enormous in amount were likely to be destroyed by statutes of limitation. In *State ex rel. Johnson v. Washburn*, 22 Wis. 99, *State ex rel. C. & N. W. R. Co. v. O., A. & B. W. R. Co.* 100 Wis. 538, and *State ex rel. Meggett v. O'Neill*, 104 Wis. 227, this court refused to act, predicating its refusal principally on the existence of another ordinary remedy, in that the action of the circuit courts could be reviewed on appeal, but also, in the last of those cases, on the absence of diligence in the relator.

In the light of these general rules and these illustrations

of the policy of the court, turning to the case in hand we find that the complaint presents a suit attempted to be brought, ostensibly at least, to protect rights of others as well as plaintiff's. He, by his affidavit, also made obvious that his name was being used in the interest of others; for such others were to ·pay the expenses of the suit and had employed the attorneys to conduct the same. The relief sought in this action, now protected by the provisional remedy of an injunction *pendente lite*, might well be rendered impossible before another action could be commenced; and this, too, because of an extraordinary injunctional order obtained by the defendants, restraining not only the parties in court by name, but all taxpayers and all abutting owners, from commencing any suit to reach the purpose of this one. The appearances attending the attempt to discontinue were such as might well arouse the suspicion of the court that the plaintiff had now colluded with the defendants to defeat.the relief which he had first undertaken to pursue as a champion for others. One or another of these considerations has been given weight against applications to discontinue in the various cases cited above. One of the strongest reasons against joining the Linden Land Company as plaintiff, as an abutter, namely, that its property is not located upon the same extension as Trentlage's and not affected by the acts alleged to be imminent on First avenue, seems not to lie well in defendants' mouths, for they had by their injunctional order against all abutting owners claimed a scope for the complaint broad enough to include the Land Company.

It is not for us, however, in this summary proceeding, to decide whether the situation rendered either necessary or proper the refusal to discontinue, or the joining of the new plaintiff in the suit. We need not consider whether the complaint states any cause of action, nor, if it does, whether such cause is as taxpayer or as abutting owner, nor, if the latter,

whether it is broad enough to vindicate the rights of the Linden Land Company as such, nor whether it is properly amendable to accomplish such purpose. Neither need we consider whether the temporary injunction ought to be continued in the present situation. All of these matters were proper for judicial consideration by the superior court, and its determination upon any or all of them may readily be brought before us by appeal, for revision and correction if erroneous. We certainly find nothing in the record to suggest that the judge of the superior court has approached these questions otherwise than in a thoroughly judicial manner, that he has arbitrarily denied an order over which he had not authority to deliberate, nor, in short, that he has done otherwise than gravely and judicially consider and decide, within the field of his jurisdiction, that the plaintiff's ordinary right to discontinue his own suit cannot be exercised in the present situation without injury to rights of others which the court was bound to respect. Such action by the trial court under such circumstances does not justify the exertion of the power of superintending control.

*By the Court.*— The imperative writ of *mandamus* is denied.