GRUNERT, Appellant, vs. SPEICH and another, Respondents.

*February 22—May 13, 1902.*

(1) *Discontinuance.* (2) *Promissory notes: Payment: Estoppel: Account stated.* (3) *Appeal: Consideration of facts not found: Exceptions.*

1. After a cause has been submitted for decision plaintiff cannot discontinue without the assent of the court.
2. Plaintiff, who was defendant's financial agent, at their request paid their note to a bank, and charged the amount to them in their account. Afterwards an account was stated between the parties, whereby, with defendants' assent, the note was taken out of the account, to be held by plaintiff as an outstanding obligation. Plaintiff then collected the amount of the note from one W., an accommodation maker with defendants, but was compelled, at the suit of W., to make restitution on the ground that the note had been paid by plaintiff at the bank. Plaintiff repossessed himself of the note and brought action thereon against defendants. *Held,* that defendants are estopped to assert that the note is not, as to them, an outstanding obligation.
3. Where facts established at the trial, but erroneously omitted from the findings, entitle plaintiff to judgment as a matter of law, the appellate court may, on appeal from a judgment for defendants, consider such facts and direct a judgment accordingly, in order to prevent great injustice, even though there was no exception to the omission of the trial court to find such facts.

APPEAL from a judgment of the circuit court for Green county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

Action to recover on a promissory note, dated August 31, 1895, signed by the defendants with one Wyss as their ac-

commodation maker, whereby they agreed to pay the Citizens' Bank of Monroe, Wisconsin, or order, $2,000 on demand after date. Defendant *Marty* answered that plaintiff purchased the note of the bank and that it was fully paid before the commencement of the action; that after plaintiff became the owner thereof he and Wyss induced defendants to give security therefor to Wyss; that Wyss paid the note to plaintiff, and defendants secured the former as requested, and that he realized upon the security sufficient to fully cancel the indebtedness. The answer further alleged payment by defendant *Speich*. Defendant *Speich* answered separately, pleading the same matters, substantially, as his codefendant.

The cause was tried by the court. The evidence conclusively established the following facts: When the note was given, for a considerable time theretofore and thereafter, defendants were manufacturers of cheese and plaintiff was their financial agent. He took their cheese products and sold them on commission, crediting defendants with the proceeds upon his books and paying them money from time to time on account. He also furnished them considerable quantities of supplies from time to time, and indorsed notes for them which he subsequently took up, charging money paid in the latter transactions and for supplies to defendants' account. February 20, 1896, defendants requested plaintiff to pay for them the note in suit, which he did. The paper was delivered to him by the bank, unindorsed, and was retained by him. On April 22, 1896, he rendered defendants a bill of their account showing debit items, including the amount paid on the note, aggregating $22,385.20, and credits to the amount of $20,247.33. Defendants kept such bill, and the circumstances were such that it became an account stated between the parties. June 1, 1896, plaintiff again rendered defendants a second bill of their account, in which the note was credited back to them, indicating that it was held as an outstanding obligation. Such statement of account indi-

cated that defendants owed plaintiff $2,951.95. The last bill was retained by defendants without objection, and the circumstances were such that it became an account stated between the parties. Thereafter plaintiff demanded pay on the note from Wyss, and he in turn demanded of defendants that they should protect him. Thereafter defendants, with the knowledge and advice of plaintiff, gave security to Wyss, and he paid the plaintiff. The security turned out to be of little value. The only sum realized applicable to or applied on the note was $300. Subsequently Wyss obtained what he supposed was credible information that plaintiff did not purchase the note of the Citizens' Bank, but that he paid it for defendants. Thereupon he sued all the parties to this action for jointly imposing upon him to his damage, to the extent of the money paid on the note and interest. The defendants in this action set up as a defense substantially the same facts as those contained in their answers now. The case was tried, the issues being whether *Grunert* paid the note for *Speich* and *Marty* at the bank or purchased it, and whether *Speich* and *Marty,* after the note came to the possession of Wyss, paid him. The circuit court decided both such issues in favor of Wyss, except that he had received from *Speich* and *Marty* $300. The court further decided that all the parties were guilty participants in fraudulently inducing Wyss to pay the note to *Grunert*. Judgment was rendered accordingly. *Grunert* and *Speich* and *Marty* joined in an appeal to this court. The judgment was affirmed on the following facts: First, that *Grunert* paid the note at the Citizens' Bank for the account of *Speich* and *Marty;* second, that he fraudulently induced Wyss to pay him, pretending that the note was still an outstanding obligation upon which he, Wyss, was liable; third, that *Speich* and *Marty* recognized Wyss as the owner of the note after he came to the possession thereof, and paid him $300 thereon but no more. The decision of the lower court as to *Speich* and *Marty* being guilty partici-

pants in the fraud was reversed on the ground that there was no finding of fact or allegation in the complaint connecting them therewith, and that the evidence did not clearly show guilt on their part; on the contrary, that it tended to show that they believed, from the fact that the note was credited back to them in the second bill rendered and from the state of their account as shown by such bill, that the note was an outstanding obligation, and indicated by their conduct that they preferred to deal with Wyss with reference to it rather than with *Grunert.* [108 Wis. 38.]

Appellant paid the Wyss judgment, repossessed himself of the note, and thereupon brought this suit. Proof of all the facts in regard to the prior case was made by the introduction of the record in evidence, and by evidence independently thereof. None of such facts are covered by the findings filed by the trial court, except those in regard to the making of the note to the Citizens' Bank, there being a running account between plaintiff and defendants, and that the latter requested the former to take up the note for them. The bills rendered and the book account were offered in evidence, and there was testimony that *Grunert* was requested to pay the note for defendants, but there was no direct evidence that he was told by them to charge the note to them. The trial court found that *Grunert* was requested by *Speich* and *Marty* to pay the note and to charge it to their account; that in April, 1896, they had credit on such account sufficient to discharge all their liabilities to *Grunert,* including the note; that no application of any credit items in payment of any debit items was made prior to the commencement of this suit; that Wyss paid the note in full to *Grunert* without any knowledge that the same had been previously paid by the defendants.

As a conclusion of law the court found that the credits to defendants upon *Grunert's* books should be applied, so far as necessary, in discharge of any claim of plaintiff upon the note. Judgment was rendered accordingly.

After the case was submitted for decision the plaintiff offered to pay the costs of the suit and gave notice of a discontinuance. Defendants' counsel refused to receive the costs or to consent to a discontinuance. Thereupon plaintiff's counsel obtained an order to show cause why he should not be permitted to discontinue. Before the return day of the order, findings were filed and judgment was rendered, and upon such return day the motion for leave to discontinue was denied.

For the appellant there was a brief by *P. J. Clawson, A. S. Douglas,* and *James Lane Allen,* attorneys, a supplemental brief by *Mr. Clawson* and *Mr. Douglas,* and oral argument by *Mr. Clawson.*

For the respondents there was a brief by *Smith & Pierce,* attorneys for *Marty,* and *J. L. Sherron,* attorney for *Speich,* and oral argument by *W. M. Smith* and *C. E. Pierce.*

The following opinion was filed March 11, 1902:

MARSHALL, J. It was not a very orderly procedure to grant a hearing on a motion for leave to discontinue and to render judgment before the day for the hearing, but we are unable to see wherein appellant was prejudiced thereby. Moreover, the order denying the motion for leave to discontinue was made after judgment and cannot be reviewed upon appeal from the judgment. If we consider the motion as having been impliedly denied, and the order granting a hearing dismissed by the entry of judgment, and in that light that the ruling is here for review, appellant has still no good ground to complain except as to the manner in which the matter was disposed of, which, of course, does not go to the merits thereof. Since the case had been submitted for decision when the effort to discontinue was made, plaintiff had no absolute right to so terminate the litigation. Sec. 2856, Stats. 1898. There was no way in which his effort to discontinue could have been made effective without the order

of the court, and manifestly it was justified in refusing to grant such a favor after the case had been fully tried and was ready for judgment. Under any circumstances, the assent of the court to a discontinuance was necessary in order to render it effective. *State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226, 82 N. W. 158.

It seems that the true history of this cause, for some reason, did not find a place in the findings filed by the learned trial court. As indicated in the statement, no fact appears in the findings in favor of respondents upon which they relied in their answers, nor on the evidence upon which appellant relied to obtain favorable findings entitling him to judgment, notwithstanding the decision of this court, previously rendered, that he purchased the note for the account of respondents. All those matters seem to have been ignored, though the findings made are in accord with evidence which is unimpeachable as to any material particular, and on their face support the judgment. Probably the trial court announced a decision in favor of defendants and thereafter signed findings which counsel prepared, covering only such facts as they supposed would support such decision, the court relying upon counsel to prepare findings covering all the litigated questions deemed by either party material to the cause, which were within the issues made by the pleadings or litigated on the trial. That is a common practice, but not a safe one, unless the trial judge is careful to see that the findings cover the case properly, before affixing his signature thereto. Counsel, in the earnest pursuit of the particular interest they represent, are liable to lose sight of others, and that tendency is to be guarded against. The cause, as now presented, is further complicated by the fact that there are no exceptions to the court's failure to find upon all the material facts. So far as this court is concerned it would perhaps be justified in affirming the judgment because it is supported by the findings and the findings are not contrary to the evidence in any

material particular. If that course were always pursued there would be many cases where serious injustice would be done, attributable, perhaps, wholly to failure to so try the case as to bring clearly to the attention of the court the errors in the record which are relied upon.

The exceptions to the findings of fact, as we view the case, can be passed over briefly. The first material finding on matters in dispute is that respondents requested appellant to pay the note and to charge it to them in their account. There is no direct evidence to that effect; but since the evidence shows that appellant was respondents' financial agent, that they relied upon him largely for money to conduct their business, that their money came from the proceeds of manufactured products turned over to him to be sold on commission for their account, that the proceeds of their business substantially all came through his hands, the reasonable inference is that when they told him to pay or take up the note for them the understanding was that it was to be paid for and charged to them as a canceled obligation. That is probably the way the trial court viewed the matter. The next finding excepted to is that at the time the note was paid, and for a considerable time prior thereto, and thereafter, appellant sold respondents' products on commission and that there was a running open account between them. There is no dispute about that in the evidence. The next finding complained of is that in April, 1896, respondents' credits with appellant exceeded their indebtedness to him on account, including the note. That does not definitely appear. If the case were to turn on that finding it would be very difficult to sustain the judgment. In any event, as appears, the account was stated between the parties April 22, 1896, at which time there was a balance due appellant over and above the note. Moreover, we do not deem that material. If appellant was requested to pay the note for the account of respondents, the understanding being that it was to be charged to them and not

held as an independent debt, and it was charged accordingly, as the fact is, it ceased to exist as an outstanding obligation and could not thereafter, without consent of respondents, express or implied, be restored to its former status. So it is immaterial whether the credit items of the respondents were sufficient to extinguish the note and all their other indebtedness to appellant in April, 1896. The next finding objected to is that no application was made of particular credit items in discharge of particular debit items, in the book account, prior to the commencement of the suit. There is .no dispute about that in the evidence. The last finding excepted to is that Wyss paid the note in full to *Grunert.* That is not disputed. Upon such findings, obviously, respondents were entitled to judgment, if the court was justified, under the circumstances, in disregarding the undisputed facts to which we have referred, not mentioned in the findings, though there is hardly a circumstance found by the court that can be referred to any issue raised by the pleadings.

As indicated in the statement, the defense pleaded in respondents' answers was litigated in the suit of Wyss against the parties to this action, the facts being found against them. That the case was dismissed as to them does not militate against the effect of such findings. They were heard fully on their claim that appellant purchased the note and thereafter obtained his pay of Wyss, and that they paid Wyss. The decision was against them, except that they paid Wyss $300. The judgment of dismissal was based in part on such determination. The issues in that regard were decided in reaching the final judgment, and were closed thereby as to all the parties to the litigation as much as any issue in the case. The introduction in evidence of the record of that cause, upon the trial of this case, was a complete answer to respondents' pleaded defense. Moreover, it established the facts that the transaction between Wyss and *Grunert* was fully rescinded, that the note was thereby restored to *Gru-*

*nert,* that respondents did not part with anything of value to Wyss as a payment upon the note while he possessed it, except the $300, and that they fully acquiesced in *Grunert* treating the paper as an outstanding obligation against them after he purchased it, so that a change of their position in that regard would necessarily prejudice him.

The learned counsel for respondents, knowing the aforesaid facts when the answers in this case were drawn, were too wise to put forward, as a defense, payment of the note to *Grunert* by its being charged in the running account. They evidently depended upon defeating it upon the ground that respondents paid it to Wyss after his payment thereof to *Grunert,* thinking that, notwithstanding the decision in the former case, respondents could retry that question, the final result before, as to them, being a dismissal of the cause, though it was grounded on the fact that they had not paid Wyss anything except the $300, but were not parties to the fraud in securing payment from him by *Grunert.* The trial court, we assume from the findings, rightly decided against that view and rendered judgment for respondents, overlooking the effect upon the rights of the parties of those things which occurred after the note was charged in the bill rendered, as part of the running account between them.

There can be no controversy but that *Grunert's* taking up the note and rendering the first bill in which it was charged to respondents, and their acquiescence therein, looking at those facts most favorably to them, constituted an account stated between the parties, which could not thereafter be changed without the consent of all of them, except for fraud of one party and mistake of the other, or mutual mistake. The way was open, however, for the parties to give new life to the note as between themselves, but not as to Wyss without his consent. It was perfectly competent for respondents to consent to have the note credited back to them and held by *Grunert* as an outstanding obligation. If that was done,

they were as effectively bound by the note as if it had never formed a part of the account. That is too clear for reasonable controversy. The subsequent rendition of the bill of account, to which respondents fully assented, and their unqualified recognition of the note as a valid obligation, leave no room for doubt but that they consented to have it taken out of the account and restored · to its former efficiency. While the whole proceeding of taking the note out of the account and collecting it of Wyss was a fraud upon him, it is by no means certain that there was moral turpitude in the matter on the part of anybody. Neither appellant nor respondents probably understood the legal effect of their actions. At the time the note was collected of Wyss respondents owed the amount thereof, either on the note or as a part of their indebtedness on account to *Grunert*. The circumstances were such that they could not make immediate payment to either Wyss or *Grunert,* and that insistence upon such payment meant suspension of their business. Wyss was in a position to carry them, it seems, better than *Grunert*. He did that for some time, giving them an opportunity to use their best efforts to pay the note without serious embarrassment. So they were not injured, but rather benefited, at least were favored, by the paper being taken out of the account and collected of Wyss.

The result of all the transactions before detailed is that the account between *Grunert* and respondents was fully settled, with the note treated as an independent obligation, and that *Grunert* thereafter expended large sums of money on the faith of respondents' assent to that situation, and that they will not be prejudiced at all by being compelled to meet the amount due on the note after giving them credit for the amount they paid Wyss. They owe the balance justly, either upon the note or upon the account. As the account stands, it cannot be legally · considered to include anything paid by *Grunert* for the note. The mere fact that he was com-

pelled to make restitution to Wyss did not give him any
right to restore the note to the account, or to charge respond-
ents with money paid to discharge the Wyss judgment. He
did not discharge such judgment for respondents' account or
at their request. It represented the damages suffered by Wyss
by the wrongdoing of *Grunert*. The transaction between him
and Wyss was rescinded by the latter, and the note restored
to him or placed at his disposal long before he paid the judg-
ment for damages. The account having been settled with the
note out of it, it cannot be surcharged and the note or the
amount paid Wyss restored thereto except for fraud or mis-
take between the parties to the account, and it is difficult to
see how either could be shown. The upshot of the whole situ-
ation is that if respondents were sued on the account by *Gru-
nert,* he would be met with the account stated, with a fair
probability, at least, that he could not change it. So the result
is that the conduct of respondents has been such that, unless
they are estopped from prevailing against the note upon the
ground that it was extinguished by including it in the ac-
count stated,—one, as before indicated, which they did not
pretend to rely upon in their pleadings,—they will probably
succeed in escaping from paying the note or refunding the
money paid for them to take it up, except as to the $300
paid Wyss; and if they are held estopped by their con-
duct from being heard successfully to claim that the note
was extinguished by being paid for and charged in their ac-
count appellant will obtain judgment for the amount paid
for them for the note, less what he has already received, be-
ing the $300 paid Wyss, and the interest, $66.50, which was
left charged in the account at the time the note was taken
out. In the event of appellant having judgment as indi-
cated, and respondents being compelled to pay the same,
they will not pay a dollar other than what they honestly owe.

That the plainest principles of estoppel *in pais* apply to
the situation above indicated, precluding respondents from

prevailing on the facts found by the trial court, does not require discussion. A person cannot change his position at will in his dealings with another regardless of that other's interests. Having once assented, in such dealings, to a particular line of conduct, so that a change of his attitude, if allowed to prevail, would operate to the prejudice of such other, he cannot make the change. *Frei v. McMurdo,* 101 Wis. 423, 77 N. W. 915. In the case cited the rule is stated to be general that, 'if a person takes a position for the purpose of inducing another to act in a particular way, or with knowledge or reasonable means of knowledge that he will thereby be induced to so act to his injury if such position be changed, and such other does so act, such person is bound by his position so taken, without regard to whether it was in accord with the truth or not.' The trial court here found, on sufficient evidence, that the note was paid to be charged by appellant in the account between the parties. Respondents, beyond question, acquiesced in its being taken out of the account. If they did not know the purpose thereof as to Wyss, they certainly knew the effect thereof as to themselves, and to that extent restored the note. That, of itself, is sufficient to preclude them from defending upon the ground that the note was extinguished in the account. Their subsequent conduct effectually estops them from making any such defense.

It is so clear from what has been said that the judgment appealed from is wrong, and that great injustice would be done appellant if the error were not corrected notwithstanding the failure of appellant's counsel to properly except to the trial court's omission to make findings upon the vital issues in the case, that it is the duty of the court to right the wrong, since the power to do so exists, and the settled practice leaves the way clear for the court to do so. It has been held that on appeal the court will not consider facts disclosed by the evidence, constituting a defense or cause of action but not covered by the findings, unless the error below, in failing to

make findings in regard thereto, is preserved by proper exceptions. *Mead v. Chippewa Co.* 41 Wis. 205; *Wrigglesworth v. Wrigglesworth,* 45 Wis. 255; *Barry v. Schmidt,* 57 Wis. 172, 176, 15 N. W. 24; *Darling v. Neumeister,* 99 Wis. 426, 75 N. W. 175. But that rule is subject to several important exceptions. Manifestly that must be so. If arbitrarily applied as a universal rule, the function of the court to correct errors would often fail to accomplish justice notwithstanding manifest errors. True, the duty of the court to correct error does not necessarily include the duty to search for errors to be corrected, but it would appear to include the power to correct those which are manifest and which the party prejudiced thereby clearly did not intend to waive. The general rule undoubtedly is that the failure to except implies a waiver of the error if there be one. But that has not been applied to those errors which are obvious and relate to material issues of fact upon which the judgment rests or should rest. The court may look into the record and affirm a judgment upon the evidence if it is clearly supported thereby, though on the findings it would have to be reversed, notwithstanding the failure to find the material fact or facts so manifestly disclosed by the record was not excepted to. *Jones v. Jones,* 71 Wis. 513, 38 N. W. 88; *Raipe v. Gorrell,* 105 Wis. 636, 81 N. W. 1009. A judgment may be affirmed on the evidence in such a case, even though the essential facts are not thereby shown to exist without dispute. It is sufficient if they are established to a reasonable certainty. *Maldaner v. Smith,* 102 Wis. 30, 41, 78 N. W. 140; *Hamilton v. Menominee F. Q. Co.* 106 Wis. 352, 81 N. W. 876; *Brown v. Griswold,* 109 Wis. 275, 285, 85 N. W. 363. In *Wetzler v. Duffy,* 78 Wis. 170, 47 N. W. 184, it was held that the general rule, that the court will not consider any fact disclosed by the evidence but erroneously left out of the findings unless there is an exception thereto preserved in the record, "is only applicable to a case

where the testimony sustains the findings made by the court, and there is not sufficient evidence in the case to require, as a matter of law, a finding different from those found by the court upon some other material matter." Here the material matters pleaded in the answers were disproved, and those relied upon by the plaintiff to meet the facts found by the court were established as a matter of law, and of course should have been covered by the findings. If they had been so covered, the conclusion of law from all the facts would necessarily be as above decided.

When the note was taken out of the account it was credited to respondents at $2,000, the $66.50 interest paid by appellant being left in the account; $1,847 of the damage paid Wyss by *Grunert* represented the principal sum due on the note after crediting the $300 paid Wyss by respondents. Between them and appellant the amount of principal then due was $66.50 less than $1,847. That, as indicated, is because, while the interest paid by *Grunert* to the bank, $66.50, remained charged to respondents in the account, *Grunert* collected the same from Wyss. The result is that respondents justly owe on the note to appellant $1,780.50 and interest thereon at the rate of seven per cent. per annum from September 18, 1896. A judgment should be rendered in his favor accordingly.

*By the Court.*—Judgment is reversed, and the cause remanded with directions to render judgment in favor of the plaintiff as indicated in this opinion.

A motion by respondents for a rehearing was denied May 13, 1902.